Lawrence Harold **WOOD**, Appellant,

v.

**UNITED STATES** of America,
Appellee.

No. 18211.

United States Court of Appeals
Eighth Circuit.

June 2, 1966.

Rehearing Denied June 29, 1966.

Phillip S. Brown, Kansas City, Mo., made argument for appellant and filed brief.

Bruce C. Houdek, Asst. U. S. Atty., Kansas City, Mo., made argument for appellee and filed brief with F. Russell Millin, U. S. Atty., Kansas City, Mo.

Before VOGEL, Chief Judge, and MATTHES and MEHAFFY, Circuit Judges.

MATTHES, Circuit Judge.

Appellant has twice been convicted of violating Title 18 U.S.C.A. § 2117.[1] We reversed the first conviction and remanded for a new trial, 342 F.2d 708. We now affirm.

Appellant challenges the sufficiency of the evidence to sustain the jury's verdict, and assigns as error the failure of the court to grant his motion for judgment of acquittal.

Consideration of the evidence in the light most favorable to the prevailing party, Glasser v. United States, 315 U.S. 60, 80, 62 S.Ct. 457, 86 L.Ed. 680 (1942); Coon v. United States, 360 F.2d 550 (8 Cir. May, 1966) convinces us that the verdict is supported by and is responsive to competent and substantial evidence.

Appellant offered no defense, and we are unable to detect any material conflict in the Government's evidence.

Armour & Co. consigned a quantity of meat from its plant in Kansas City, Kansas, to Elmira, New York. Missouri Pacific Railroad Co. (Mo. Pac.) was the originating carrier. Refrigerator car ARL 9090 contained the shipment of meat, and on the night of June 13, 1963, was being transferred as part of a twenty-car complex in the railroad yards in Kansas City, Missouri, prior to its New York departure. Between 9:00 and 10:00 o'clock p. m. two yard employees of Gulf, Mobile & Ohio Railroad Co. observed that the south door of a refrigerator car, moving eastwardly, was open; that a "colored" man was standing in the doorway "with a pile of meat" in front of him; that another "colored" man was on the end of the same car. The incident was immediately reported to special officers of Mo. Pac. The ensuing investigation by the officers revealed these facts: (1) the south door of ARL 9090 was found open, the seal having been broken; (2) an automobile parked in the vicinity of Guinotte and Troost Streets with newspapers spread over the rear floor boards and the driver's seat; (3) two boxes containing Armour meat destined to Elmira, New York, in weeds under a big tree on the north side of the tracks four or five blocks east of the parked automobile.[2]

Shortly after the automobile and meat had been discovered, Barnabas Henry Ferrell, appellant's accomplice, was arrested near the automobile. At approximately 11:15 on the same night, appellant was accosted by a special agent of Mo. Pac. near Guinotte and Troost. The agent, who was familiar with appellant, observed "grease and blood" on the shirt appellant was wearing.

In the second trial, the Government introduced evidence, not presented in the first trial, relating to the construction of refrigerator cars of the type of ARL 9090. This evidence proved that the doors on each side of the car are fastened on the outside by a lever and that, upon

---

1. Section 2117 provides that whoever enters any railroad car, containing interstate shipments, with intent to commit larceny therein, shall be fined or imprisoned or both. The indictment under which appellant was tried, charged that appellant entered Missouri Pacific box car ARL 9090, containing meat being shipped from Kansas City, Kansas, to Elmira, New York, with intent to commit a larceny therein.

2. It is uncontradicted that when refrigerator car ARL 9090 arrived at its destination in Elmira, New York, meat was missing from the Armour shipment.

raising the lever approximately one inch and swinging it around, the doors may be opened. There is a stirrup or step immediately below the doors which is designed for use in mounting the car and entering the same through the doorway. From the evidence the jury could justifiably find that such a car could be mounted while it was in motion, the seal could be broken, the door opened, and entry gained in a very short period of time and without difficulty.

Prior to the trial, accomplice Ferrell had pleaded guilty to stealing meat from an interstate shipment, and had been given a suspended sentence. As in the first trial, Ferrell gave damaging testimony against appellant. Ferrell had been acquainted with appellant prior to June 13, 1963. That evening, between 8:00 and 8:30 o'clock, for $15.00 which appellant agreed to pay, Ferrell transported appellant, at his direction, to Guinotte and Troost Streets. Upon arrival, a freight train was passing through the transfer yards. Appellant stated that he was going to "catch the train" and "told me to catch it, too". Appellant informed Ferrell that he "was going to throw something off" and directed Ferrell to "remove it from the tracks". Ferrell saw appellant get on the south side of a car that was proceeding eastwardly. Ferrell, who also mounted the same train but to the rear of appellant, did not see appellant enter a car or throw anything off, but shortly after getting on, Ferrell "saw something" on the ground and "I figured that must be it". Ferrell alighted immediately and saw two boxes along the track with the word "Armour" on the outside of the boxes. He carried the boxes northwardly across the tracks and placed them in some weeds. Shortly thereafter appellant talked to Ferrell and said "thank you" or "something, I don't remember what it was". It was dark but Ferrell recognized appellant's voice. As Ferrell was walking "down Guinotte" he was "picked up" by the police and arrested for "box car theft".

Appellant would have us ignore accomplice Ferrell's testimony on the ground that his testimony was uncorroborated. The rule is, however, that an accomplice is not disqualified as a witness in federal criminal trials. Nor is his testimony, per se, lacking in substantiality so as to render it insufficient as a basis to convict without corroboration. A conviction can properly rest on the uncorroborated testimony of an accomplice if it is not otherwise incredible or insubstantial on its face. Williams v. United States, 328 F.2d 256, 259 (8 Cir. 1964), cert. den. 377 U.S. 969, 84 S.Ct. 1651, 12 L.Ed.2d 739, and cases cited.

There was substantial corroboration of Ferrell's version of what occurred. His automobile was found in the vicinity of the offense. Two men were observed on one of the cars being moved eastwardly, one standing in the south doorway with a pile of meat in front of him, the other on the end of the car; a Mo. Pac. car containing Armour meat had been entered and a part of the shipment removed therefrom; boxes containing meat with the name "Armour" thereon were found where the accomplice stated he had placed them. Appellant and Ferrell were arrested in the area the same night of the occurrence.

We have carefully considered all aspects of appellant's attack upon the sufficiency of the evidence. It is true that the evidence revealed that another Mo. Pac. box car, containing meat, had been entered the same night. There is some discrepancy in the witnesses' testimony as to the type of meat that was found. However, these were matters that were more properly addressed to the triers of the facts. We have carefully examined the record, and are fully satisfied that the essential elements of the offense were established by probative evidence and that there is no rational basis for holding that a submissible case was not made.

Complaint is made that the court erred in admitting incompetent and prejudicial evidence.

Mo. Pac.'s special agent, McCahon, testified on direct examination to his part in the investigation following the report of a box car theft. He had known appellant prior to June 13, 1963. He saw and talked with him at approximately 11:15 that night on Guinotte Street. Shortly thereafter police arrived and took appellant into custody. On cross-examination of McCahon, the following ensued:

"Q. Now, at the time you first stopped him did you know this car had been entered into?

"A. No, I knew we'd had a robbery and other than that I did not know.

"Q. Is that the reason you stopped him, you knew this?

"A. That and the fact I knew him and *had prior experience with him.*" (Emphasis supplied).

■ No objection was made to the last answer then or at any time during the trial. Neither did appellant assert error or prejudice in his motion for new trial. Thus, it will be seen that the trial court was never presented with an opportunity to rule on the matter. Having failed to comply with Rule 51 Fed.R. Crim.P., the assignment is not reviewable. Certainly, admission of the testimony now complained of did not constitute plain error or affect the substantial rights of appellant. Rule 52 Fed.R. Crim.P. While it may be arguable that the witness' "prior experience" imputed that appellant had been in the toils of the law on past occasions, that inference does not necessarily follow. In any event, we are not persuaded to hold that the questioned testimony was prejudicial.

■ Neither do we find any substance in the contention that error resulted from McCahon's testimony that he saw grease and blood on appellant's shirt. Contrary to appellant's objection at the trial, the answer was not a "conclusion". Considering all of the circumstances, and particularly the time and place, it was proper to permit the witness to describe the appearance of appellant. The failure of the Government to produce the shirt at trial, or evidence of an analysis of the grease and blood, were matters for the jury's consideration in determining the weight to be given the witness' testimony. Appellant's counsel made the most of such failure in his argument to the jury.

■ Finally, appellant contends that the court's charge on circumstantial evidence does not conform to the standard that has been applied by this court.[3] In *Tri-Angle Club*, the late Judge Gardner, speaking for the court, stated:

"Where the evidence for conviction is circumstantial, all the circumstances proved must be consistent with each other, consistent with the hypothesis that accused is guilty, and inconsistent with every reasonable hypothesis except that of guilt." 265 F.2d p. 833.

In our case, the jury was told:

"Circumstantial evidence is the proof of certain facts and circumstances from which certain inferences inevitably arise, according to the common experience of mankind. These inferences, of course, need not inevitably follow, but they ought to reasonably follow the circumstances detailed in evidence. These circumstances ought to be consistent with each other, with the [Government's] theory * * * and inconsistent with any reasonable hypothesis of the defendant's innocence."

Manifestly, the instruction did not materially depart from the standard we have applied in testing the sufficiency of the

---

3. Appellant relies upon Tri-Angle Club, Inc. v. United States, 265 F.2d 829 (8 Cir. 1959), and Wesson v. United States, 172 F.2d 931 (8 Cir. 1949), for the standard for which he contends. See also, Sykes v. United States, 312 F.2d 232, 235 (8 Cir. 1963), cert. den. 373 U.S. 942, 83 S.Ct. 1551, 10 L.Ed.2d 698; Byrth v. United States, 327 F.2d 917, 919 (8 Cir. 1964), cert. den. 377 U.S. 931, 84 S.Ct. 1333, 12 L.Ed.2d 295.

evidence. In any event, the Supreme Court of the United States has clearly indicated that it is unnecessary to submit such a standard where the jury is properly instructed on the standards for reasonable doubt.

"The petitioners assail the refusal of the trial judge to instruct that where the Government's evidence is circumstantial it must be such as to exclude every reasonable hypothesis other than that of guilt. There is some support for this type of instruction in the lower court decisions (citing cases), but the better rule is that where the jury is properly instructed on the standards for reasonable doubt, such an additional instruction on circumstantial evidence is confusing and incorrect, (citing authorities).

"Circumstantial evidence in this respect is intrinsically no different from testimonial evidence. Admittedly, circumstantial evidence may in some cases point to a wholly incorrect result. Yet this is equally true of testimonial evidence. In both instances, a jury is asked to weigh the chances that the evidence correctly points to guilt against the possibility of inaccuracy or ambiguous inference. In both, the jury must use its experience with people and events in weighing the probabilities. If the jury is convinced beyond a reasonable doubt, we can require no more." Holland v. United States, 348 U.S. 121, at pp. 139–140, 75 S.Ct. 127, at pp. 137–138, 99 L.Ed. 150 (1954).

In our view, *Holland* is a complete answer to appellant's claim of error. The court, having properly instructed on the standards for reasonable doubt, was not required to submit, as it did, the circumstantial evidence standard.

A full canvass of the record demonstrates that appellant was found guilty on substantial evidence in a trial free of prejudicial error.

The judgment is affirmed.