STATE of South Dakota, Plaintiff and Appellee,

v.

Kurt A. NOVAOCK, Defendant and Appellant.

No. 15548.

Supreme Court of South Dakota.

Argued Sept. 3, 1987.

Decided Oct. 21, 1987.

Jon R. Erickson, Asst. Atty. Gen., Pierre, for plaintiff and appellee; Roger A. Tellinghuisen, Atty. Gen., Pierre, on brief.

Kenneth W. Cotton of Wipf & Cotton, Wagner, for defendant and appellant.

SABERS, Justice.

Kurt Novaock (Novaock) appeals his conviction of murder in the first-degree while engaged in the felony of robbery under SDCL 22–16–4.

### Facts

Jerry Plihal's body was discovered in his Delmont, South Dakota residence on the afternoon of June 16, 1985. The subsequent investigation revealed that he died as a result of multiple stab wounds inflicted sometime between the evening of June 13 and June 15, 1985. Novaock and Lewis Ashker were indicted on murder charges by a Douglas County Grand Jury on December 3, 1985. Ashker was tried and convicted of premeditated murder on June 10, 1986. *See State v. Ashker*, 412 N.W.2d 97 (S.D.1987) for details. Novaock was tried and convicted before a Yankton County jury on October 21, 1986.

Novaock claims that the evidence did not establish a prima facie case against him and was insufficient to sustain a verdict of guilt beyond a reasonable doubt. In particular, he claims that there was insufficient evidence to reasonably infer that he "participated" in the crime charged. Novaock makes two other claims of prejudicial error: the admission of photographs, slides, and a mannequin used in the medical examiner's testimony and the denial of his pretrial motion to suppress evidence and commentary concerning Ashker.

## 1. SUFFICIENCY OF THE EVIDENCE

■ Novaock argues that lack of evidence concerning theft, disposition of decedent's guns, and lack of connection between Novaock and either the guns or decedent's wallet undermine the State's case on the underlying felony of robbery.

Novaock argues that the disparity between the accounts of witnesses who testified that they saw him in a green pickup or a white van destroys the reliability of these identifications. He asserts that even if he had been seen in Delmont on June 13th, there was evidence that Plihal was still alive on June 14th. Novaock emphasizes the fact that no conclusive physical match could be made between the paint chips found near decedent's clothesline pole and the damaged area on the pickup.

Novaock contends that the absence of fingerprints linking him to the crime scene, of any evidence of "cleaning up," of blood in the pickup, and of any association with the missing guns and wallet, exonerate him on the question of participation.

The State presented evidence that the decedent's wallet—emptied of anything but identification—was found abandoned in a ditch along Betts Road north of Delmont. The fact that decedent's wallet was removed from his person at or about the time of his murder and later discarded is substantial evidence that decedent was robbed. There is no question that he was murdered. It seems logical to infer that these two crimes occurred at approximately the same time. There appears to be sufficient evidence to infer that the underlying felony was committed, and that the perpetrator or

perpetrators of the robbery were also participants in the murder.

The State urges that our criminal justice system depends upon "the wisdom and integrity of twelve jurors to determine the credibility and accuracy of the witnesses, and to weigh their testimony accordingly." Four witnesses testified to seeing a pickup similar to Ashker's in Delmont on the evening of June 13th. Three witnesses testified to seeing Novaock in Delmont on June 13th. It was for the jury to determine the credibility of these witnesses.

Although no conclusive match was made between the paint chips and Ashker's pickup, the State elicited testimony as to the similarity in type and color of paint. There was also evidence that the damage to the tailgate of Ashker's pickup corresponded with the damage to the clothesline pole in decedent's backyard. This was factual evidence from which a jury could reasonably infer that Ashker's pickup collided with a clothesline pole in decedent's backyard.

In determining the sufficiency of the evidence on appeal in a criminal case the issue before this court is whether there is evidence in the record which, if believed by the jury, is sufficient to sustain a finding of guilt beyond a reasonable doubt. '[I]n making such a determination this Court will accept that evidence and the most reasonable inferences that can be fairly drawn therefrom, which will support the verdict.' *State v. Dale*, 379 N.W.2d 811, 814 (S.D.1985); (citations omitted).

*State v. Davis*, 401 N.W.2d 721, 722–23 (S.D.1987). The jury could reasonably believe, based on the evidence presented and reasonable inferences therefrom, that:

1) Novaock was in Delmont the evening of June 13, 1985.

2) Novaock was there with Ashker.

3) Novaock and Ashker were driving around Delmont in Ashker's pickup.

4) Ashker's pickup collided with, was damaged, and caused damage to a clothesline pole in the decedent's backyard.

5) A ball point pen, from Ashker's home town of Wayne, Nebraska was found on the ground near the damaged clothesline pole. It was found in a spot where it could have rolled out of the pickup when the pickup struck the pole.

6) Plihal was stabbed to death in the living room of his Delmont home on the evening of June 13, 1985.

7) Plihal's murderers robbed him of his wallet and guns.

8) Novaock had motive and opportunity to participate in the murder.

Although this court recently decided *Ashker, supra*, we do not cite it as completely controlling the factual decision in this appeal. Differences in the evidence require that this appeal be decided on its own facts. The cases cited in *Ashker* are sufficient authority, however, to sustain the sufficiency of the evidence in this case.

## 2. PARTICIPATION

■ "It is the rule that mere presence at the scene of a crime does not make a person a participant. It is, however, a circumstance which tends to support a finding of participation and, with other facts and circumstances, may establish guilt." *State v. Wedemann*, 339 N.W.2d 112, 116 (S.D. 1983). In this case, facts and circumstances existed which, when considered with presence, could support a finding of participation.

Dr. Brad Randall testified that the blood spatter testing done at the crime scene demonstrated that there was an absence of blood in a place where there should have been blood. He testified that this fact could be explained by the existence of an obstruction (such as an assailant). Other testimony by Dr. Randall, based upon the appearance of the wounds, could create an inference that more than one person inflicted wounds on the decedent.

Novaock was a former resident of Delmont and neighbor of the decedent. He had knowledge of the town and the decedent's house and possessions. "When the evidence indicates that the defendant was more than a passive bystander and knowingly did something to assist in the commission of a crime, then his status changes." *State v. Schafer*, 297 N.W.2d 473, 476 (S.D. 1980). There was evidence sufficient to

place Novaock at the scene of the crime and evidence sufficient to sustain the jury's finding that Novaock was "more than a passive bystander." It seems clear that the jury could reasonably believe it was more than mere coincidence that the defendant would drive many miles to visit a small, out-of-the-way town he had not lived in for over a year on the same night that a local resident and former neighbor was robbed and murdered.

## 3. ADMISSION OF PHOTOGRAPHS, SLIDES, AND MANNEQUIN

■ Defense counsel made a pretrial motion to prevent the State from utilizing certain exhibits in connection with the testimony of Dr. Brad Randall, the forensic pathologist. At an in-chambers hearing during the trial, and prior to Dr. Randall's testimony, defense counsel again objected to the exhibits. The State contended that the evidence was properly admissible as necessary to assist the expert witness in presenting testimony to the jury. The slides and photographs were duplicates. The reasons given for duplication were: (1) use of the slides would allow all the jurors to see the same picture at the same time and less distraction would occur if the jurors did not have to pass the photographs around, and (2) the photographs made it unnecessary to send a slide projector to the jury room.

The court allowed the exhibits. Defense counsel requested that the record note his objection "to each and every one of the photographs." Defense counsel also objected on the record to the slides to be used by Dr. Randall.

Defense counsel's request that his objection be noted on the record after his original objection was overruled was sufficient as a continuing objection to preserve the issue for appeal.

Although the photographs and slides were grotesque and the admission of both was cumulative, such admissions were not improper because they were necessary to aid the expert's presentation, prevent jury distraction, and aid the jury. *See State v. Holland,* 346 N.W.2d 302, 307 (S.D.1984). The use of the mannequin was likewise proper.

## 4. REFERENCE TO AND COMMENTARY ABOUT ASHKER

■ As indicated above, Novaock moved pretrial to exclude all references to Ashker, who had been previously tried and convicted of murder arising from the same situation. The State argued that the association with Ashker was essential to show participation by two people, especially in a circumstantial evidence case. This argument has substantial merit. The trial court denied the motion, but instructed defense counsel that he would consider objections to specific references or commentary as they arose in the course of the trial. Novaock makes no reference to any specific objections made during the course of the trial and the record does not reveal any such objections. The admission of these references did not constitute plain error nor affect the substantial rights of Novaock. Therefore, this issue was not adequately preserved for our review. Novaock was aware that he had the opportunity to object to any references to Ashker which might be prejudicial to him. No specific objections were made. He cannot now argue that he was unfairly prejudiced. "Reversible error cannot be predicated upon the denial of a motion in limine. *State v. McKee,* 312 N.W.2d 907 (Iowa 1981); *State v. McNeal,* 699 S.W.2d 457 (Mo.App.1985); *State v. Pointer,* 224 Neb. 892, 402 N.W.2d 268 (1987); *State v. Maurer,* 15 Ohio St.3d 239, 473 N.E.2d 768 (1984); *Woodard v. State,* 696 S.W.2d 622 (Tex.App.1985). *See* SDCL 19–9–3. Not having specifically objected ... therefore forecloses [him] from complaining now." *State v. Olson,* 408 N.W.2d 748, 751–52 (S.D.1987). *Wood v. United States,* 361 F.2d 802, 805 (8th Cir.) *cert. denied* 385 U.S. 978, 87 S.Ct. 520, 17 L.Ed.2d 439 (1966).

We affirm.

All the Justices concur.