1997 SD 53

**STATE of South Dakota, Plaintiff and Appellee,**

v.

**Gary KNECHT, Defendant and Appellant.**

No. 19685.

Supreme Court of South Dakota.

Argued March 25, 1997.

Decided May 14, 1997.

Rehearing Denied June 27, 1997.

Mark Barnett, Attorney General, Gary Campbell, Assistant Attorney General, Pierre, for Plaintiff and Appellee.

Gary G. Colbath, Jr., of Banks, Johnson, Colbath & Kerr, Rapid City, for Defendant and Appellant.

SABERS, Justice.

[¶ 1.] Gary Knecht appeals his conviction and 75–year sentence for first degree manslaughter in the shooting death of Jerry Marshall. He claims the trial court deprived him of a fair trial by 1) allowing the State to present irrelevant, cumulative, and prejudicial evidence, and 2) suppressing evidence relating to Marshall's arrest record and specific incidents which indicated Marshall's alleged propensity for violence. He also claims 3) the prosecution's failure to disclose or late disclosure of evidence constitutes misconduct, 4) the evidence was insufficient to support the verdict, and 5) the sentence of 75 years constitutes cruel and unusual punishment. We affirm.

## FACTS

[¶ 2.] Knecht admits shooting and killing Marshall on December 15, 1995 in Martin, South Dakota. He claims he acted in self-defense after suffering a severe beating by Marshall. The initial altercation between the two men occurred in the bar area of the Martin Legion Club. Witnesses testified that Knecht stood up from the table at which he and Marshall sat and "sucker-punched" Marshall, who fell to the floor. There was conflicting testimony about whether Knecht scuffled with Marshall on the floor. The two were separated almost immediately. Marshall was heard to mutter "what did I do?" or "what was that about?" Knecht was quickly escorted to the door. Marshall was briefly detained before Legion employees asked him to leave; he left without an escort, caught up with Knecht outside and began to repeatedly punch and kick him.[1]

[¶ 3.] The State and Knecht disagree on what happened next. Knecht claims he and Marshall struggled as he attempted to get into his truck, and that he reached for a .22 semi-automatic rifle and fired at Marshall's legs "as he was coming back at me." Knecht states that Marshall began to walk away from him, but "something about the way he was moving made me think he was going to return." This, Knecht claims, prompted him to fire at the pavement to "make him continue moving away," and that none of these bullets hit Marshall.

[¶ 4.] The State claims that Marshall was retreating and Knecht did not fire any shots until Marshall was some distance away. Eyewitness testimony indicated that Marshall was moving away from Knecht and that he fell only a few steps after the shots began.

---

1. It is unclear whether Knecht intended to wait outside for Marshall, but he testified Marshall attacked him from behind.

An autopsy revealed that Marshall was hit by six different bullets, with the fatal shot striking him in the chest. This bullet broke a rib, perforated both lobes of his left lung, and hit his left pulmonary artery, causing three liters of blood to collect in his chest cavity, killing him.

[¶ 5.] Knecht left the scene, hid the gun, and was later arrested upon his arrival at his home. He was indicted by a Bennett County Grand Jury, which charged him with five alternate counts of homicide: First degree murder, second degree murder, and three alternate counts of first degree manslaughter. He pled not guilty and the case went to jury trial. Knecht's motion for a change of venue was unopposed by the State and the case was moved to Hughes County. Following jury selection, however, the remainder of the trial was conducted in Fort Pierre, at the Stanley County Courthouse. The jury convicted Knecht of one count of first degree manslaughter in violation of SDCL 22–16–15(2), which provides:

Homicide is manslaughter in the first degree when perpetrated:

. . . . .

(2) Without a design to effect death, and in a heat of passion, but in a cruel and unusual manner[.]

The trial court sentenced him to 75 years in the state penitentiary. He appeals.

[¶ 6.] **1. WHETHER THE TRIAL COURT DEPRIVED KNECHT OF A FAIR TRIAL BY ALLOWING THE STATE TO PRESENT IRRELEVANT, CUMULATIVE, AND PREJUDICIAL EVIDENCE.**

[¶ 7.] SDCL 19–12–3 (FedREvid 403) permits the trial court to exclude evidence if, among other reasons, it is cumulative or prejudicial:

Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

Our standard of review is whether the trial court abused its discretion. *State v. Cross*, 390 N.W.2d 564, 566 (S.D.1986). Relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." SDCL 19–12–1 (FedREvid 401). "Cumulative evidence is evidence of the same character as evidence previously produced and which supports the same point." *Stormo v. Strong*, 469 N.W.2d 816, 824 (S.D.1991) (citations omitted).

[¶ 8.] Knecht argues that many of the photographs offered by the State showing Marshall's body shortly after the shooting and at his autopsy, his clothing, the hospital linens, and his wounds constituted cumulative evidence. He claims it was unnecessary to show so many pictures to demonstrate the magnitude of Marshall's blood loss because he admitted shooting Marshall and that he was found in the street sitting in a pool of blood. Similarly, he claims the use of a mannequin by the State to show the pattern of bullet wounds was unnecessary. Therefore, he asserts, the State did not introduce the photographs or use the mannequin to establish any facts which it needed to prove. "It is well settled the State must prove every element of the charged offense beyond a reasonable doubt. Admissions or stipulations to facts by the defendant do not relieve the State of its burden of proving the necessary elements of the offense. The State is not bound by a defendant's offer to stipulate to facts in an attempt to rob the evidence of much of its fair and legitimate weight." *State v. Eagle Star*, 1996 SD 143, ¶ 26, 558 N.W.2d 70, 75–76 (citations & internal quotations omitted).

[¶ 9.] The State's explanation for offering the photographs and other evidence of the amount of blood lost by Marshall is two-fold; first, according to the statute under which he was convicted, the jury had to find that the killing was perpetrated in a cruel and unusual manner. SDCL 22–16–15(2). We agree that the State had to prove more than just the fact a killing took place—the nature of the crime was also relevant. We have re-

viewed the photographs and find them not nearly as "grotesque" as those properly admitted in *State v. Novaock*, 414 N.W.2d 299, 302 (S.D.1987). Even defense counsel stated, "I also think that the jury ought to be told that all of the blood and gore, normal autopsy pictures have been removed so that no one is—should be shocked here." Therefore, the trial court did not abuse its discretion in admitting the photographs or other evidence relating to the wounds and the magnitude of the blood loss.

[¶ 10.] Second, because Knecht claimed self-defense, the photographs were relevant to prove the State's opposing theory of the case. "When a defendant raises the affirmative defense of self-defense, it is incumbent upon the State to prove beyond a reasonable doubt that the killing was without authority of law." *State v. Burtzlaff*, 493 N.W.2d 1, 7 (S.D.1992) (citations omitted). The great amount of blood on Marshall, his clothing, and the street where he fell, belied Knecht's claim he shot in self-defense at close proximity—there was no blood identified as Marshall's between where Knecht shot his gun and where Marshall fell, a distance of nearly ninety feet. *See, e.g., Novaock*, 414 N.W.2d at 301 (blood spatter testing done at the crime scene demonstrated an absence of blood in a place where there should have been blood). Additionally, this court has previously held that use of a mannequin to show the pattern of bullet wounds is permissible. *See id.* at 302; *see also State v. Clothier*, 381 N.W.2d 253, 259 (S.D.1986) (expert testimony concerning trajectory of bullets used to contradict the defendant's claim of accidental discharge).[2]

[¶ 11.] Knecht also objects to the admission of evidence regarding collection of the shell casings and retrieval of the gun, which he hid by a telephone pole after the shooting. As for the shell casings, they were relevant and admissible to show the distance between Knecht and Marshall. It is hard to fathom how evidence of the crime scene could be characterized as irrelevant. *See, e.g., Novaock*, 414 N.W.2d at 302 (finding admissions of photographs and slides cumulative but properly admissible because they were necessary to aid the expert's presentation, prevent jury distraction, and aid the jury); *State v. Lohnes*, 432 N.W.2d 77, 87 (S.D.1988) (videotape of crime scene properly admitted). Testimony concerning the gun was also relevant. *See State v. Stavig*, 416 N.W.2d 39, 40 (S.D.1987) (stating when a weapon is tied to a crime, it is properly admissible, so long as there exists some direct connection between the weapon and the crime); *see also State v. Lownes*, 499 N.W.2d 896, 901 (S.D.1993) (holding that the State must demonstrate with reasonable probability that no tampering or substitution has occurred in chain of custody evidence, and that the trial court has great discretion regarding its competency).

---

2. Knecht also argues the testimony of the hospital personnel regarding the efforts to save Marshall was unnecessary, cumulative, and immaterial. The State argues it was trying to foreclose a *"Bennis"* defense. See *State v. Bennis*, 457 N.W.2d 843, 845 (S.D.1990), where this court rejected defendant's attempt to interject an "intervening cause" defense, i.e., medical malpractice, stating:

> [E]vidence establishing the wounded victim might have recovered, if the wound had been more skillfully treated, was no defense to a charge of murder.... [M]edical malpractice will break the chain of causation and become the proximate cause of death only if it constitutes the sole cause of death. We think this ... correctly summarizes the law relative to intervening acts arising out of medical treatment in the United States.

(Adopting language from *State v. Sauter*, 120 Ariz. 222, 585 P.2d 242 (1978)) (emphasis omitted). While such a defense was never argued, and was unlikely to be argued in light of Knecht's admission that he shot and killed Marshall in self-defense, the testimony was relevant to the prosecution's theory of the case. The State had to meet Knecht's self-defense claim with evidence establishing, beyond a reasonable doubt, that the killing was not justified. *See Burtzlaff*, 493 N.W.2d at 7. Obviously, evidence relating to Marshall's wounds and blood loss was imperative to its burden. Furthermore, part of the treating nurse's testimony concerned his discovery of an expended bullet which apparently exited Marshall's leg. "The 'chain of custody' rule requires the prosecution to account for the whereabouts of physical evidence connected with a crime from the time of its seizure to its offer at trial[.]" *State v. Lownes*, 499 N.W.2d 896, 901 (S.D.1993) (citing *State v. Iron Necklace*, 430 N.W.2d 66, 81 (S.D.1988)). Knecht has failed to demonstrate how this evidence and testimony prejudiced his defense.

█ [¶ 12.] The trial court did the required balancing on the record as to all of this evidence and found it more probative than prejudicial. *State v. McDonald,* 500 N.W.2d 243, 246 (S.D.1993). Knecht has failed to show an abuse of discretion by the trial court. His argument that this evidence "drowned the defense in a prejudicial quagmire from which it was unable to escape [because] the defense was needlessly forced to cross-examine, refute, and counteract such evidence throughout the trial" is not grounds for a new trial. "Just because the [evidence was] harmful to [Defendant] does not mean [it was] unfairly prejudicial. Unfair prejudice means evidence that has the capacity to persuade by illegitimate means." *State v. Brings Plenty,* 459 N.W.2d 390, 399 (S.D. 1990) (citing *State v. Holland,* 346 N.W.2d 302 (S.D.1984) (other citation omitted)). In this case, the probative value of the evidence put on by the State to prove, beyond a reasonable doubt, that Knecht did not act in self-defense was not outweighed by any unfair prejudice to Knecht.[3] *Id.*

[¶ 13.] **2. WHETHER THE TRIAL COURT ERRED BY SUPPRESSING EVIDENCE RELATING TO MARSHALL'S ARREST RECORD AND SPECIFIC INCIDENTS INDICATING HIS PROPENSITY FOR VIOLENCE.**

█ [¶ 14.] During a pretrial motions hearing, the State successfully moved to prevent Knecht from introducing any evidence pertaining to Marshall's criminal record or to specific acts showing his alleged propensity for violence when intoxicated. Knecht argues this was error and that he should have been allowed to use both to support his self-defense theory.

In making evidentiary rulings, the trial court has broad discretion. [Defendant] must show an abuse of discretion to reverse the trial court's ruling. The trial court's findings in connection with a mo-tion to suppress are reviewed under the clearly erroneous standard.

*State v. Stetter,* 513 N.W.2d 87, 91 (S.D.1994) (internal citations & quotations omitted).

[¶ 15.] Knecht's argument that he should have been allowed to introduce specific instances of Marshall's violent conduct is baseless, as is his reliance on *State v. Latham,* 519 N.W.2d 68 (S.D.1994). In *Latham,* we outlined the circumstances under which specific acts relating to the victim's violent nature may be used to bolster a self-defense claim:

Latham was claiming self defense. In order for him to prevail, the jury had to believe that he acted in response to a reasonable fear that Walker was going to harm him. *See State v. Burtzlaff,* 493 N.W.2d 1 (S.D.1992).

SDCL 19–12–7 provides:

In cases in which character or a trait of character of a person is an essential element of a charge, claim, or defense, proof may also be made of specific instances of his conduct.

Under SDCL 19–12–7, specific instances of conduct relating to Walker's violent nature when intoxicated were admissible to establish the reasonableness of Latham's fear....

Latham was entitled to present appropriate evidence relating to specific instances of conduct in support of his claim of self defense. Latham needed to show that his fear of Walker was reasonable. *However, only specific instances of conduct known to Latham at the time of the incident in question were relevant. State v. Dokken,* 385 N.W.2d 493, 501 (S.D.1986).

*Id.* at 71 (emphasis added; footnote omitted). Knecht does not argue he was aware of any specific instances of violent conduct by Marshall; therefore, he can not use any such instance to show his fear was reasonable. *Id.* We affirm the trial court's ruling on this issue.[4]

---

3. Knecht argues other evidence or testimony was cumulative and/or irrelevant. We have examined the record and find these contentions to be without merit.

4. Knecht *was* allowed to elicit testimony concerning Marshall's reputation for drug and alcohol abuse, and his tendency to be violent when intoxicated. *See* SDCL 19–12–6 (FedREvid 405(a)):

**[¶ 16.] 3. WHETHER THE PROSECUTION'S FAILURE TO DISCLOSE OR LATE DISCLOSURE OF EVIDENCE CONSTITUTED MISCONDUCT.**

[¶ 17.] The trial court denied Knecht's motion for mistrial based on prosecutorial misconduct. "A trial court's ruling on a motion for a mistrial, based on misconduct of counsel, will not be disturbed absent a clear abuse of discretion." *Robbins v. Buntrock*, 1996 SD 84, ¶ 6, 550 N.W.2d 422, 425 (citations omitted). "Prosecutorial misconduct implies a dishonest act or an attempt to persuade the jury by use of deception or by reprehensible methods." *State v. Davi*, 504 N.W.2d 844, 855 (S.D.1993) (quoting *State v. Ashker*, 412 N.W.2d 97, 103 (S.D. 1987)). We recently reiterated the four-part test to determine whether a due process violation resulted from the prosecution's suppression of evidence. *See Black v. Class*, 1997 SD 22, ¶ 16, 560 N.W.2d 544, 548:

1. Was the defense unaware of the evidence?

2. Is the evidence favorable to the defense?

3. Is the evidence material to the defense?

4. Did the defense make a request for the evidence?

*Id.* (citing *State v. Fowler*, 1996 SD 79, ¶ 22, 552 N.W.2d 391, 395 (*Fowler II*)) (other citation omitted). All four of these questions must be answered affirmatively. *State v. Fowler*, 1996 SD 78, ¶ 22, 552 N.W.2d 92, 96 (*Fowler I*).

[¶ 18.] Knecht argues the State suppressed two potentially key pieces of evidence. First, Knecht argues the State suppressed a blood sample taken from the street near his truck. This sample does not qualify as "suppressed" evidence, as it was used at trial. *See State v. Fox*, 313 N.W.2d 38, 40 (S.D.1981):

It is important to note our statement in *State v. Sahlie*, 277 N.W.2d 591 (S.D.1979), that the rule of *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), requiring disclosure of material and exculpatory material applies only to situations where the defense discovers after trial that the prosecution had material information that remained undisclosed during the trial.

(Quoting *State v. Moves Camp*, 286 N.W.2d 333, 339 (S.D.1979)).

[¶ 19.] Knecht claims that if the blood was Marshall's, it would corroborate his self-defense claim. State did not respond to this argument in its brief. The transcript shows the results of testing on this sample were inconclusive as to whether it was Knecht's or Marshall's blood. Knecht cross-examined the criminalist who conducted the test. We have searched the record and are unable to find any other pertinent reference, request, or objection concerning this sample. Therefore, Knecht's argument fails because 1) this evidence was not suppressed, and 2) he has not demonstrated that he was prevented from conducting his own tests on this sample.

[¶ 20.] The next piece of evidence Knecht argues the State suppressed is a copy of a drug and alcohol evaluation conducted by the State's expert, a witness not called by the State. Because the trial court ordered the evaluation, Knecht was put on notice of any report the expert may have generated. Therefore, we reach the same conclusion as with the blood sample—Knecht simply does not meet the test set forth in *Black*, 1997 SD 22 at ¶ 16, 560 N.W.2d at 548.[5]

[¶ 21.] Knecht also argues the prosecution was untimely in its disclosure of

---

In all cases in which evidence of character or a trait of character of a person is admissible, proof may be made by testimony as to reputation or by testimony in the form of an opinion. On cross-examination, inquiry is allowable into relevant specific instances of conduct.

Knecht also argues specific instances of violent conduct should have been allowed to impeach any witness whose testimony downplayed Marshall's violent nature. While we agree, *see id. & Black v. Class*, 1997 SD 22, ¶¶ 19–23, 560 N.W.2d 544, 549–50, Knecht offers neither a specific instance nor a reference to the record to show he was denied that opportunity.

5. Knecht argues the State's choice not to use the report indicates it was exculpatory. However, there is nothing in the record to indicate a report actually exists, and if so, whether it is favorable or material to the defense, as required by *Black, supra.* Furthermore, the defense stated during a motions hearing that it would be conducting its own alcohol evaluation on Knecht. If there was anything favorable or material to be found in

certain evidence. The primary focus of his argument is the prosecution's disclosure on the eighth day of trial that there was an eyewitness to Marshall's use of marijuana the day of the shooting. This caused the trial court to reverse its earlier ruling prohibiting mention of THC found in Marshall's blood at the time of his death. The State replied in its brief that it only learned of this marijuana consumption on the day it revealed it to the court and defense counsel. At oral argument, the State conceded there was a delay in imparting the information to the defense; it is not clear how much time elapsed, but it was disclosed the same day. Thereafter, the evidence was presented to the jury. Knecht fails to demonstrate how this prejudiced his defense. Furthermore, "[w]e do not equate late disclosure with suppression, especially where, as here the trial record indicates that defense counsel made use of the information at trial." *Fox*, 313 N.W.2d at 40 (citation omitted). Other allegations of late disclosure are unaccompanied by any showing of prejudice to his defense.[6] "The fact that the exculpatory evidence was fully revealed during the trial, however, mitigates the effect of the oversight.... [T]he defendants have not established that the belated disclosure was material to the issue of guilt. If it was not material, it could not be violative of due process." *State v. Reiman*, 284 N.W.2d 860, 869 (S.D.1979) (citations omitted).[7]

[¶ 22.] 4. **WHETHER THE EVIDENCE WAS SUFFICIENT TO SUPPORT THE VERDICT.**

In determining the sufficiency of the evidence on review, the question presented is whether there is evidence in the record which, if believed by the fact finder, is sufficient to sustain a finding of guilt beyond a reasonable doubt. *State v. Lewandowski*, 463 N.W.2d 341, 343–44 (S.D. 1990). In this review, we must accept that evidence, and the most favorable inferences to be fairly drawn therefrom, which will support the verdict. *Id.* at 344 (citations omitted). In determining the sufficiency of the evidence, this Court will not " 'resolve conflicts in the evidence, pass on the credibility of witnesses, or weigh the evidence.' " *State v. Hanson*, 456 N.W.2d 135, 139 (S.D.1990) (quoting *State v. Faehnrich*, 359 N.W.2d 895, 900 (S.D. 1984)). No guilty verdict will be set aside if the evidence, including circumstantial evidence and reasonable inferences drawn therefrom, sustains a reasonable theory of guilt. *State v. Bartlett*, 411 N.W.2d 411, 412 (S.D.1987).

*State v. Two Bulls*, 1996 SD 53, ¶ 17, 547 N.W.2d 764, 767 (quoting *State v. Wall*, 481 N.W.2d 259, 262 (S.D.1992)) (emphasis omitted). The most favorable inference which can be drawn from the evidence that Marshall was walking away from Knecht and that there was no blood identified as Marshall's between the two men for nearly ninety feet, is that Knecht was no longer, if ever, acting in self-defense. This evidence is sufficient to support a finding of guilt of manslaughter beyond a reasonable doubt. "So long as the evidence and rational inferences drawn from the evidence support a reasonable theory of guilt, the conviction must be affirmed." *Id.* at ¶ 29, 547 N.W.2d at 769.

[¶ 23.] 5. **WHETHER THE SENTENCE OF 75 YEARS CONSTITUTES CRUEL AND UNUSUAL PUNISHMENT.**

[¶ 24.] Knecht claims his sentence is disproportionate to his crime, that it

---

such a report, the defense could have supplied its own.

**6.** Furthermore, the State made a motion for a continuance at a March 22, 1996 hearing, expressly stating that all tests were not complete:

There are a number of tests that are still being conducted by the State Lab, [defense counsel] doesn't have the reports on them, they are still being done, they are material to the preparation of the State's case. There are a number of serious evidentiary questions that haven't been resolved yet and will be resolved only a few days prior to trial.

The defense strenuously objected to a continuance and insisted the trial begin April 1. At a March 27 motions hearing, the State asked defense counsel where he would be during the weekend before trial so that he could be provided with Department of Criminal Investigation reports as they were compiled. The defense did not object to receiving those tests on the eve of trial and cannot be heard to complain now.

**7.** Knecht makes other vague allegations of prosecutorial misconduct, which are without merit.

shocks the conscience, and constitutes cruel and unusual punishment under both the South Dakota and the United States Constitutions. *See* U.S. Const. amend. VIII (forbidding the infliction of cruel and unusual punishment); SD Const. art. VI, § 23 (prohibiting cruel punishment in similar language).

> Generally, the state and federal constitutional provisions barring cruel and unusual punishments refer to the character, such as barbaric penalties involving physical torture, rather than the duration of punishment. Although punishment by imprisonment is not per se cruel and unusual it may be constitutionally offensive when the duration of the sentence prescribed is so excessive or disproportionate to the crime committed as to shock "the conscience and reason of men generally."

*State v. Peterson*, 1996 SD 140, ¶ 19, 557 N.W.2d 389, 393 (quoting *State v. Antelope*, 304 N.W.2d 115, 117 (S.D.1981)). Knecht was convicted of SDCL 22–16–15(2), a Class 1 Felony carrying a maximum penalty of life imprisonment. SDCL 22–6–1(3). Knecht's sentence is within the statutory range. "It is settled law in this state that absent a sentence which is so excessive in duration that it shocks the conscience of the court, a sentence that is within statutory limits is not reviewable on appeal." *Peterson*, 1996 SD 140 at ¶ 20, 557 N.W.2d at 393 (citations omitted).

[¶ 25.] This court has developed a *two-fold* test to determine whether the sentence is so constitutionally offensive as to shock the conscience:

> First, is the punishment so excessive or so cruel, as to meet the disapproval and condemnation of the conscience and reason of men generally. And second, whether the punishment is so excessive or cruel as to shock the collective conscience of this court.

*Id.* (citations omitted). The first test does not, as Knecht argues, necessitate a proportionality review with other states in a noncapital case. *See id.* at ¶ 21 n. 5, 557 N.W.2d at 394. "Public intent is reflected in the

legislative acts defining the permissible punishment for specific crimes." *Id.* at ¶ 22, 557 N.W.2d at 394 (citations omitted). Knecht offers no other grounds for reversal under this first test.

[¶ 26.] Under the second test, whether the punishment is so excessive or cruel as to shock the collective conscience of this court, we look to the procedure employed by the trial court in framing an appropriate sentence:

> [T]he sentencing court should acquire a thorough acquaintance with the character and history of the man before it. This study should examine a defendant's general moral character, mentality, habits, social environment, tendencies, age, aversion or inclination to commit crime, life, family, occupation, and previous criminal record.

*State v. Pulfrey*, 1996 SD 54, ¶ 10, 548 N.W.2d 34, 37 (citing *State v. Chase in Winter*, 534 N.W.2d 350, 354 (S.D.1995) (other citations omitted)).

[¶ 27.] The trial court considered all of these factors, including his military service, for which he was highly decorated, and the absence of prior serious criminal convictions. Knecht did not object to any of the information contained in the presentence investigation, upon which the court relied in sentencing. The court noted the inescapable, that a life was taken, that Knecht committed the crime while under the influence of alcohol and with a dangerous weapon, near the main street, with children in the vicinity. The trial court declined to sentence Knecht to life imprisonment, expressly stating she could not conclude he was incapable of rehabilitation. The trial court also noted Knecht would be eligible for parole in slightly less than ten years, rejecting the State's suggested sentence which would have left him parole ineligible until he was 70 years old.[8]

[¶ 28.] In light of these circumstances, the 75–year sentence does not constitute cruel and unusual punishment. Accordingly, the judgment of conviction and sentence is affirmed.

---

8. Knecht was 48 at sentencing.

[¶ 29.] MILLER, C.J., and AMUNDSON, KONENKAMP and GILBERTSON, JJ., concur.

