ZINTER, Justice
(concurring in part and concurring in result in part).
[¶ 32.] I concur on all issues except issue three. On issue three, I concur in result because admitting the video tape simply “to show what occurred at that particular time,” did not establish relevance. Nevertheless, the video tape was relevant to support the reliability of two witnesses whose testimony refuted Krebs’s claim of self-defense. Therefore, it was admissible.
[¶ 33.] “It is well settled that photographic images] are generally admissible where they accurately portray anything that a witness may describe in words. *102 They are also admissible when they are helpful in clarifying a verbal description of objects and conditions. They must, however, be relevant to some material issue.” State v. Owens, 2002 SD 42, ¶ 89, 643 N.W.2d 735, 756-57 (citing State v. Holland, 346 N.W.2d 302, 307). In this case, Krebs relied on a claim of self-defense. “When a defendant raises the affirmative defense of self-defense, it is incumbent upon the State to prove beyond a reasonable doubt that the killing was without authority of law.” State v. Knecht, 1997 SD 53, ¶ 10, 563 N.W.2d 413, 418 (quoting State v. Burtzlaff, 493 N.W.2d 1, 7 (1992) (citations omitted)). This burden of persuasion made evidence disproving self-defense relevant.
[¶ 34.] As the Court notes, Judge Trim-ble initially allowed the video tape into evidence “to show what [was occurring] at that particular time.” Supra ¶26. But additionally, in the pretrial ruling on admissibility, Judge Trimble also noted that it was possible the video could be used for other purposes at trial, such as determining credibility or impeaching a witness. As it turned out, he was precisely correct. The State used the video to establish the reliability of statements made by two witnesses who refuted Krebs’s claim of self-defense.
[¶ 35.] The State introduced the video tape during the testimony of Deputy Sheriff Mark Osborne. Osborne was one of the responding officers that stopped the ear transporting Darrow to the hospital immediately after the stabbing. During this stage of the incident, Osborne observed two witnesses make statements regarding what had occurred. Osborne first observed Darrow’s girlfriend (C.H.), who had been at the scene when the stabbing occurred, state that two males rushed the victim (Darrow) to fight him. This statement was contrary to Kreb’s claim of self-defense. Krebs, however, contended that C.H.’s statement was biased and untruthful because she was the victim’s girlfriend. The video was used to prove that at the time her statement was made, C.H. was crying and in a hysterical state, and therefore, the statement was a reliable excited utterance. As the State argued in its closing statement, C.H.’s physical state, as depicted on the video, tended to prove that her comments were made while she was under the excitement of the stabbing; thus, she had no time to reflect on her comments or fabricate untruthful statements. See State v. Bult, 351 N.W.2d 731, 735-36 (S.D.1984) (stating “that a person under the sway of excitement precipitated by an external startling event will be bereft of the reflective capacity essential for fabrication and that, consequently, any utterance [s]he makes will be spontaneous and trustworthy”). Thus, the video tape was relevant because it tended to corroborate C.H.’s statement, which tended to prove that Krebs was the aggressor rather than acting in self-defense.
[¶ 36.] The video tape was also relevant because it supported Michael Wiseley’s testimony. In support of his self-defense claim, Krebs contended that he and his friends were “ambushed” and outnumbered by the individuals who were already at the party, including Wiseley. The State attempted to disprove this contention by establishing that Wiseley and other “ambushing” individuals were not involved in or even close to the fight. In attempting to prove this point, the State called Wise-ley, who testified that he was not involved in the fight and that he only saw the very end of the incident when Krebs and his friends were running away.
[¶ 37.] The video tape supported Wise-ley’s testimony because it provided an image of his physical appearance immediately after the fight. The tape displayed that *103 Wiseley’s clothes were straight, clean, and not torn and that he had no visual signs of physical injury. From this image, a viewer could infer that Wiseley was not recently involved in a fight. As a result, the video’s depiction of Wiseley’s physical condition immediately after the fight was relevant to support his testimony that he was not involved in a fight with Krebs.
[¶ 38.] In sum, the defense claimed self-defense. To support that theory, the defense attempted to portray C.H. as biased and untruthful and Wiseley as an aggressor. The State had the burden of disproving Krebs’s claims. To meet its burden, the State used the video tape to support C.H.’s statement and Wiseley’s testimony, both of which tended to disapprove self-defense. For these reasons, the video was relevant, and the trial court did not abuse its discretion in admitting it into evidence.[6]
[¶ 39.] KONENKAMP, Justice, joins this special writing.

. The trial court also ruled that the videotape was not unduly prejudicial. Photographic images "are not rendered inadmissible merely because they incidentally tend to arouse passion or prejudice.” Owens, 2002 SD 42, ¶ 89, 643 N.W.2d at 757 (citations omitted). Rather, it is .only evidence that attempts to persuade "in an unfair or illegitimate manner” that is legally, unduly prejudicial. State v. Mattson, 2005 SD 71, ¶ 20, 698 N.W.2d 538, 546. In this case, Judge Trimble only allowed the video tape to be played without the audio. A review of the video tape without the audio confirms that it was hot unduly prejudicial. It depicts the mental and physical state of two witnesses who were stopped as they were driving the victim to the hospital immediately after the stabbing. Although the video also depicts ambulance personnel removing the victim from the vehicle,' there was no request to redact this portion. The remaining portions do not attempt to persuade in an unfair or illegitimate manner.