MEIERHENRY, Justice
(dissenting in part and concurring in part).
[¶ 43.] I dissent on issues one and two. After reviewing the record, it is my opinion that the trial court abused its discretion by not granting the defendant’s motion relating to the last minute disclosure of the telephone records one week before trial. The late-disclosed evidence consisted of approximately 130 pages, which listed over 6500 phone calls from the cellular phone number 605-677-9077 dating from July 1, 2005, to April 17, 2006. The question is not whether the State was diligent in turning over the records when it received them; the question is whether the late disclosure prejudiced the defendant in preparing a defense. State v. Krebs, 2006 SD 43, ¶ 19, 714 N.W.2d 91, 98-99 (citing State v. Michalek, 407 N.W.2d 815, 818-19 *929 (S.D.1987)). Mr. Butler pointed out to the trial court that he needed more time to investigate who was using the cellular phone, who was on the other end of the call, whether the call terminated in a conversation with someone at the number dialed, and if so, the length of the conversation. Mr. Butler asked to exclude the records at trial, or in the alternative, for more preparation time in order to counter the State’s claim that the calls in some way proved the rape and the tampering charges against Adamson.
[If 44.J The trial court denied the defense motion because the records were the defendant’s own records and thus he had “the ability to get [them] from his company at any time.” That may be true; however, he did not know until a few days before trial that the State intended to use the phone records from this cellular phone number as evidence against him. Adam-son had several phone numbers that were used in conjunction with his business. It is unreasonable to expect that he could look at a listing of 6500 phone calls from several prior months and know who used the number to make the calls, who may or may not have been on the other end of the call or the content of the call if completed.
[¶ 45.] These phone records were integral to the State’s theory of the case. As this Court stated in State v. Krebs, the probable effect of inculpatory evidence on a “jury is, in part, evidenced by its prominence in the State’s final argument.” 2006 SD 43, ¶ 22, 714 N.W.2d 91, 100. In closing argument, the State repeatedly draws the jury’s attention to these phone records and the inference that Adamson “was talking to the witnesses in this case and he was doing it in a secretive manner.” The State called A.M.B. as a witness and asked no questions of her concerning phone calls. The State asked only a few questions of A.M.B. concerning her age, when she met the defendant and her cellular phone number. The State also called Susan who testified about her conversations with the defendant. Susan does not testify that Adamson induced her or A.M.B. to testify falsely or to withhold testimony or information. Without direct evidence or testimony that Adamson intended to influence A.M.B. or Susan to lie or withhold testimony or information, the State relied on inferences drawn from the phone records as to the number of calls, the alleged person contacted and the possible content of the phone calls to prove its case.
[¶ 46.] In State v. Packed, we reaffirmed that “an accused must ‘be afforded a meaningful opportunity to present a complete defense.’” 2007 SD 75, ¶ 27, 736 N.W.2d 851, 860 (citing State v. Iron Necklace, 430 N.W.2d 66, 75 (S.D.1988) (citations omitted) (emphasis added)). When inculpatory evidence is included, or exculpatory evidence excluded, without affording a defendant an opportunity to respond to the State’s case against him, he is “effectively deprived of a ‘fundamental constitutional right to a fair opportunity to present a defense.’ ” Id. ¶ 27 (citing State v. Lamont, 2001 SD 92, ¶ 16, 631 N.W.2d 603, 608-09 (quoting Crane v. Kentucky, 476 U.S. 683, 687, 106 S.Ct. 2142, 2145, 90 L.Ed.2d 636 (1986))).
[¶ 47.] I would hold that the trial court abused its discretion by not granting the defendant’s motion to exclude the phone records or by not continuing the trial to allow Adamson more time to prepare his defense.
[¶ 48.] I also dissent on the second issue and would reverse because of insufficient evidence to support the jury verdicts as to the witness tampering counts. The majority concludes that there was sufficient evidence and that Adamson conferred a benefit on Susan and A.M.B. in order to influence their testimony by giv *930 ing Susan $500.00 to retain an attorney. However, the testimony of the State’s own witness belies the claim that the $500.00 was given to Susan in order to alter or influence her or A.M.B.’s testimony.
[¶ 49.] Susan testified under oath that the $500.00 was given as a loan and that she borrowed the money because she feared A.M.B. would face perjury charges. The following testimony was elicited from Susan at trial:
Q. Did Mr. Adamson ever threaten you to get you to testify differently or withhold information?
A. No.
Q. Did he ever promise to give you something if you would do that for him?
A. No.
Q. Did he ever make any threats about A.M.B.?
A. No.
Q. Did he ever promise that he would do something for her? Give her money? Give her something?
A. No.
[¶ 50.] Susan also testified that she grew more and more concerned that she needed an attorney because of conversations with a DCI agent about A.M.B. Susan testified that a DCI agent had informed her that, as a result of the incident with Adamson, A.M.B. could be taken away from her and she could be charged with neglecting A.M.B. These were the concerns that led Susan to seek out an attorney and ask for $500.00 from Adam-son.
[¶ 51.] The State’s evidence is that Adamson gave Susan money to hire a lawyer for A.M.B. in order that A.M.B.’s rights were protected. The State claims this money was intended to induce A.M.B. to testify falsely. Yet with advice from A.M.B’s own lawyer, it would be more likely that she would testify truthfully.
[¶ 52.] When we determine the “sufficiency of the evidence on review, the question presented is whether there is evidence in the record, which, if believed by the fact finder, is sufficient to sustain a finding of guilt beyond a reasonable doubt” accepting all the evidence and drawing the most favorable inferences “fairly drawn therefrom, which will support the verdict.” State v. Knecht, 1997 SD 53, ¶ 22, 563 N.W.2d 413, 421.
[¶ 53.] All the State had was a list of dialed numbers from Adamson’s cellular phone — the recipient and content of which were unknown — and the money Adamson gave to Susan to hire a lawyer for A.M.B. The list of dialed numbers does not prove that Adamson made the calls or that A.M.B. or Susan received the calls, and these are not fair inferences to draw from the unverified evidence presented. Even if one were to assume some of the calls were from Adamson to A.M.B. or Susan, the State presented no evidence that the subject of the phone calls was to induce them to lie in court. Additionally, giving a potential witness money to hire her own lawyer should not infer an intention to induce that witness to lie in court. Accepting all the evidence presented by the State and making all fair and reasonable inferences, the evidence is insufficient to prove beyond a reasonable doubt that Adamson was guilty of the witness tampering charges. I would reverse on issue one and two and affirm on the other two issues.