**STATE of South Dakota, Plaintiff and Appellee,**

v.

**Daniel T. BYRUM, Defendant and Appellant.**

**No. 15189.**

Supreme Court of South Dakota.

Considered on Briefs Oct. 21, 1986.

Decided Jan. 14, 1987.

Rehearing Denied Feb. 23, 1987.

Frank Geaghan, Asst. Atty. Gen., Pierre, for plaintiff and appellee; Mark V. Meierhenry, Atty. Gen., on brief.

Paul D. Stickney, of Breit & Stickney Law Offices, Sioux Falls, for defendant and appellant.

MORGAN, Justice.

Defendant, Daniel T. Byrum (Byrum), appeals from his conviction for distribution of LSD in violation of SDCL 22–42–2. Byrum was convicted of two counts of distribution of LSD after a two-day jury trial. We affirm.

On or about November 11, 1984, Kevin Langdon (Langdon) was hitchhiking in Sioux Falls, South Dakota, when he was picked up by Byrum and William Smith (Smith). Smith is Byrum's brother-in-law. The conversation between the three men eventually turned to marijuana and other drugs. According to Langdon and Smith, the conversation then turned to the question of distribution of various drugs and Smith and Byrum solicited Langdon to sell drugs for them. Langdon agreed and ob-

tained a telephone number where he could reach either Byrum or Smith. After this November 11 meeting, but before November 16, Byrum and Smith traveled to Cincinnati, Ohio, and returned with one thousand tablets of LSD. Byrum claims no knowledge of the LSD. He contends that he went to Cincinnati to participate in an annual poker game and that Smith decided to ride along. Upon arrival in Cincinnati, Byrum discovered that the poker game had been cancelled. Smith and Byrum returned to Sioux Falls shortly thereafter.

On November 16, 1984, Byrum and Smith picked up Langdon at a prearranged location. Smith provided Langdon with fifty LSD tablets to sell at a party Langdon was attending later that evening. Smith and Byrum joined Langdon at the party sometime later, and again Smith provided Langdon with fifty tablets to sell. At the same time Langdon turned over to Smith and Byrum the proceeds from the sale of the initial fifty tablets.

On November 19, 1984, Langdon was contacted by an undercover police officer. The officer purchased thirteen tablets which remained in Langdon's possession after the party on November 16. At the time of the sale, the undercover police officer inquired whether Langdon could sell larger quantities of LSD. Langdon responded in the affirmative. Later on the evening of November 19, Langdon again met with Byrum and Smith and was provided with another twenty-five tablets of LSD.

The distributions to Langdon on November 16 and 19 formed the basis for the charges against Byrum. Additional facts, which include a subsequent drug sale, provide no basis for the charges but do assist in completing the factual scenario. On November 20, 1984, the undercover police officer again contacted Langdon to inquire about a further purchase. The officer arrived at Langdon's apartment and requested to buy $400 worth of LSD tablets. Langdon responded by calling his source. Shortly thereafter Smith arrived at Langdon's apartment and produced one hundred fifteen LSD tablets for sale to the under-cover officer. At this point, Smith and Langdon were both arrested and charged with distribution of LSD.

Byrum initially contends that the trial court erred in denying his proposed accomplice instruction. Byrum asked for and received an accomplice instruction relating to the testimony of Smith. Byrum also asked for but did not receive an accomplice instruction relating to the testimony of Langdon. Byrum is correct when he contends that a conviction cannot be had solely upon the testimony of an accomplice unless it is corroborated by other evidence which tends to connect the defendant to the offense charged. SDCL 23A-22-8. The real issue, then, is whether Langdon is an accomplice of Byrum.

■ We dealt with a substantially similar accomplice issue in *State v. Fox*, 313 N.W.2d 38 (S.D.1981). *See also State v. Lingwall*, 398 N.W.2d 745 (S.D.1986). In *Fox*, we stated that "[i]t has been generally held that a purchaser of illegal drugs is not an accomplice to the crime of selling drugs." *Id.* at 40. In *Fox*, we acknowledged that the witness, Becker, was not only a purchaser of drugs, but also a seller. We stated: "Becker's status still does not constitute that of an accomplice...." *Id.* To that end, we quoted *Gray v. State*, 585 P.2d 357, 359 (Okla.Cr.1978):

A witness is not an accomplice to a defendant simply because his distinct acts happen to constitute a like offense. Rather, it is necessary that a charge against that witness could have arisen from the same occurrence as the crime for which the defendant was tried.

That the state's attorney could have chosen to prosecute both Byrum and Langdon on some charge of conspiracy to sell to the undercover officer, or some other third person, is immaterial to this discussion. That is a prosecutorial election which we have no control over, nor should we, under the doctrine of separation of powers. Nor do we see any reason to retreat from our previous decisions.

■ Byrum's next contention is that the trial court erred in admitting evidence of other bad acts by Byrum. Specifically, Byrum alleges the trial court erred in admitting testimony by Langdon that he was threatened and assaulted by Byrum in an effort to intimidate Langdon into not testifying. Byrum claims this testimony was irrelevant and immaterial and that its probative value did not outweigh its prejudicial impact. We believe the trial court correctly admitted this evidence since it was directly related to Byrum's intent to distribute the LSD or at very least showed his knowledge about the distribution. SDCL 19–12–5.

As for the argument that the probative value is outweighed by the prejudicial impact, that determination is within the sound discretion of the trial court. We find no abuse of discretion. We believe that th evidence of subsequent threats and assaults in an attempt to silence this witness was highly probative and was not *substantially outweighed* by the danger of unfair prejudice. *See* 19–12–3. We believe this same analysis applies to the testimony elicited from Claire Henning (Henning) relating to threats made by Byrum toward Henning.

■ Byrum also contends that the trial court erred by admitting bad acts testimony relating to a prior drug sale to Henning. SDCL 19–14–10 (Fed.R.Evid. 608(b)) states in its entirety:

Specific instances of the conduct of a witness, for the purpose of attacking or supporting his credibility, other than conviction of a crime as provided in §§ 19–14–12 to 19–14–16, inclusive, may not be proved by extrinsic evidence. They may, however, in the discretion of the court, if probative of truthfulness or untruthfulness, be inquired into on cross-examination of the witness

(1) concerning his character for truthfulness or untruthfulness, or

(2) concerning the character for truthfulness or untruthfulness of another witness as to which character the witness being cross-examined has testified.

Simply put, specific instances of conduct, under certain circumstances, may be inquired into on cross-examination *but may not be proved by extrinsic evidence.* When the state's attorney offered testimony by Henning relating to a prior drug sale that was denied by Byrum on cross-examination, the evidence could not be used for the purpose of attacking or supporting Byrum's credibility.

During direct examination by his own counsel, Byrum claimed that he had not sold drugs to Langdon. On cross-examination the following colloquy took place between the state's attorney and Byrum:

Q. So its your testimony that you have never sold LSD in this county, is that your testimony?

A. I have never sold LSD in this county.

Q. You know a gentleman by the name of Claire Henning?

A. Yes, I do.

. . . .

Q. Did you ever sell LSD to him?

A. No, I did not.

Lacking further circumstances, this questioning by the prosecutor, coupled with the admission of extrinsic evidence borders on prejudicial error. *See United States v. Green,* 648 F.2d 587 (9th Cir.1981); *United States v. Bosley,* 615 F.2d 1274 (9th Cir. 1980). "Prosecutors should not be permitted to escape the restrictions of Rules 404, 608, and 609 by framing questions, which, although within the scope of direct examination, have as their objective trapping the defendant into opening the door to impeachment by contradiction." 3 J. Weinstein & M. Berger, Weinstein's Evidence § 607[05], at 607–71 & –72 (1985).

■ As Weinstein points out, however, even though the evidence is not admissible under SDCL 19–14–10 (Fed.R.Evid. 608(b)), it may be admissible to impeach by contradiction as allowed by SDCL 19–14–8 (Fed. R.Evid. 607). The very able trial judge correctly ruled that the evidence of the prior drug sale was admissible for pur-

poses of impeachment by contradiction. In effect, the trial court held that Byrum had already opened the door to this type of rebuttal. During direct examination, Byrum testified that he had strong feelings against the use of drugs.

Q. What happened to cause you to have strong feelings about the use of drugs?

A. Well, like I said earlier, not only, you know, my problem that I had with it, but my younger brother was living at my mother's house with five children and his wife and she was laid off. And he was still going out with the boys and doing his drugs and partying. And he returned home one night while I was still in the halfway house and he shot himself.

By way of this testimony, Byrum represented to the court and jury that he would not take part in the sale or distribution of drugs. As a result, the admission of evidence of other drug sales was permissible.

In his third issue on appeal, Byrum contends that the trial court erred by not granting his motion for mistrial. Byrum's claim centers around the entire testimony of witness Henning. Henning's identity was kept from Byrum and his counsel until shortly before Henning was produced as a rebuttal witness. At that time, counsel for Byrum was given an opportunity to interview Henning. Byrum contends this alleged improper suppression of evidence should result in a mistrial.

■ In *State v. Clabaugh*, 346 N.W.2d 448, 451 (S.D.1984), we stated that

not every failure to produce evidence under court order will require reversal, for implicit in the requirement of materiality is a concern that the suppressed evidence might have affected the outcome of the trial. After a review of all the evidence, we do not believe that introduction of the [suppressed evidence] would have changed the ultimate verdict.

Here, like in *Clabaugh*, we do not believe that revealing Henning's identity to Byrum or his counsel would have changed the ultimate verdict. Our inquiry can cease at this point. We also note, however, that the state's attorney may have had good reasons for failing to reveal Henning's identity. Initially, it appears as though the state's attorney was unaware of Henning's testimony until just before trial. Furthermore, there was also credible evidence that Byrum had already attempted to intimidate witnesses.

■ In his final contention on appeal, Byrum states that his convictions are not supported by sufficient evidence. We do not agree. There was ample evidence to support his convictions. In addition to testimony by Smith, Langdon, and Henning, uncontradicted evidence indicates that Byrum was present in Cincinnati when the LSD was purchased and was also present in Sioux Falls when the drugs were distributed to and sold by Langdon.

We affirm the convictions.

WUEST, C.J., and FOSHEIM, Retired J., concur.

HENDERSON and SABERS, JJ., dissent.

MILLER, J., not having been a member of the Court at the time this action was submitted to the Court, did not participate.

SABERS, Justice (dissenting).

I dissent because the trial court committed reversible error in ruling that Langdon was not an accomplice as a matter of law. As a matter of fact and as a matter of law, Langdon was an accomplice. Even if we assume that he was not an accomplice as a matter of law, it certainly was a jury question. Both of defendant's proposed jury instructions 9 and 10 relating to accomplice testimony were proper and should have been given to the jury.

Accomplice instructions must be given when requested against accomplices, whether they be informers, confessed drug dealers, or anyone else engaged in the commission of a crime with the defendant.

The testimony in this case makes it clear that accomplice instructions were required.

## CROSS EXAMINATION OF KEVIN LANGDON

Q. And was that the time that you agreed to form a partnership with Smitty?

A. We had agreed to form a partnership the first day we met as far as selling the marijuana, LSD or any other drugs that they were going to bring in. We were going to get rid of them. Make the money.

Q. So it's your testimony then that the three of you agreed to go ahead and distribute drugs?

A. Right.

Q. And that no matter which one of you had the drugs, it was a pool—

A. Right.

Q. Is that correct?

A. Yes, sir.

Q. So the drugs were readily accessible to any of them?

A. Right.

Appellant correctly relies upon *State v. Dominiack*, 334 N.W.2d 51 (S.D.1983), in asserting that according to Langdon's own testimony he was an accomplice and the court committed reversible error by not giving defendant's proposed instructions 9 and 10. The following examples illustrate this point:

If a, b and c have a business agreement to sell drugs and anyone of them sells to x, a, b, and c are all accomplices to each other because they are engaged in the commission of a crime. X is not an accomplice to a, b or c. Both of these questions are determined as a matter of law.

If separately and without any business agreement, a sells to b, b sells to c, and c sells to x, neither a, b, c nor x are accomplices. This is also a matter of law as opposed to a question for the jury.

If under any of the above examples there is a question as to whether there really was a business agreement or whether they really were engaged together in the commission of a crime, then it is a jury question under proper instructions such as South Dakota Pattern Jury Instructions (Criminal) 1–14–7. If it is an accomplice situation as a matter of law instruction 1–14–7 alternate should be used. If the defendant and the witness were engaged together in the commission of a crime, then SDCL 23A–22–8 provides that a conviction cannot be had upon the testimony of an accomplice unless it is corroborated by other evidence which tends to connect the defendant with the commission of the offense. The State cannot avoid the force of this statute simply by claiming prosecutorial election [1] over which the courts may have no control. In *State v. Johnson*, 81 S.D. 600, 606, 139 N.W.2d 232, 236 (1965), we wrote, "[t]o render one an accomplice he must in some manner knowingly and with criminal intent participate, associate or concur with another in the commission of a crime." That quotation fits Byrum, Smith and Langdon exactly. We don't have to retreat from our previous decisions, we simply have to return to them. We should do so in this case.

I am authorized to state that Justice Henderson joins in this dissent.

---

1. There is no question that the State has the absolute right of prosecutorial election. That does not mean, however, that the State can sidestep the clear mandate of SDCL 23A–22–8. Nor does the State's right to prosecutorial election mean that they control or govern the instructions given to the jury. That is the court's duty just as it is the court's duty to interpret the statute which the South Dakota Legislature enacted. SDCL 23A–22–8.