1999 SD 30

**STATE of South Dakota, Plaintiff and Appellee,**

v.

**Richard V. LITSCHEWSKI, Defendant and Appellant.**

**No. 20365.**

Supreme Court of South Dakota.

Considered on Briefs Dec. 1, 1998.

Decided March 10, 1999.

Mark Barnett, Attorney General, Gay Klima Tollefson and Ronald D. Campbell, Assistant Attorneys General, Pierre, South Dakota, for plaintiff and appellee.

Michael J. Butler of Butler Law Office, Sioux Falls, South Dakota, for defendant and appellant.

MILLER, Chief Justice.

[¶ 1.] Richard Litschewski appeals his convictions of third-degree rape, first-degree rape, and sexual contact with a minor child under sixteen. We affirm.

### FACTS

[¶ 2.] On March 21, 1997, Litschewski was indicted in Walworth County, South Dakota, on one count of third-degree rape.[1] On June 23, 1997, he was arraigned on an amended indictment charging two additional counts, one count of first-degree rape and one count of sexual contact with a minor child under sixteen.[2] The charged crimes, which occurred between September 8, 1989, and April 1996, involved victims who were the young daughters of Litschewski's friends.

[¶ 3.] The first count of the indictment, third-degree rape, stemmed from Litschewski's sexual acts against J.A., an eleven-year-old female. J.A. testified that she had known Litschewski most of her life, and that her father was his long-time friend. She stated that on July 3, 1991, she and her family attended a party at the Litschewski home. During the party, she fell asleep on the living room floor. When it came time to leave, J.A.'s mother decided that rather than awaken her, she would allow J.A. to spend the night. J.A. testified that later that night she awoke and found that her underwear had been pulled down and Litschewski was touching her back and behind. She was lying on her stomach and Litschewski told her to roll

---

**1.** Third-degree rape is a violation of SDCL 22–22–1(5).

**2.** At the time the first-degree rape occurred, it was in violation of SDCL 22–22–1(4). At this time, it would be a violation of SDCL 22–22–1(1). Sexual contact with a minor child under sixteen is a violation of SDCL 22–22–7.

over onto her back. He put his hands under her shirt, fondled her breasts, and attempted, about five times, to penetrate her vagina with his penis. He achieved partial penetration. When she began crying, Litschewski told her to be quiet, so that no one else would hear her. He informed her that she should not tell anyone about what had occurred. He then left the room.

[¶ 4.] The charges in counts two and three of the indictment, first-degree rape and sexual contact with a minor child under sixteen, stemmed from Litschewski's sexual acts against C.H., his goddaughter. C.H. testified that the rape occurred on September 8, 1989, when she was seven years old, and Litschewski was a guest in her family's home. She stated that, at the time of the incident, she was in her upstairs bedroom sitting on the floor playing with her toys. Litschewski, who came upstairs to use the restroom, entered C.H.'s bedroom and sat on the floor beside her. After sitting down beside her, he lifted her nightgown, put his hand inside her underwear, and then fondled and digitally penetrated her vagina. She told him it hurt and tried to push his hands away. He assured her it would not continue hurting, and he continued the sexual act. He ended the sexual contact when C.H.'s father yelled up the stairs to ask Litschewski what was taking him so long. Before returning downstairs, he handed C.H. two dollars and told her not to tell anyone about what had occurred.

[¶ 5.] C.H. testified that seven years later, Litschewski again had sexual contact with her. In April 1996, Litschewski offered to drive her to her grandmother's home. She stated that she was hesitant to accept his offer, but did agree to riding with him. When they were approximately one block from her grandmother's house, Litschewski pulled the car over, grabbed her head and started to French-kiss her. He then put his hand up her shirt, fondled her breasts, and made remarks about her breasts and his desire to marry her. He ended this contact when she informed him that her grandmother would be waiting for her. He told her that this incident was to be kept their secret.

[¶ 6.] The trial on these charges commenced on September 29, 1997. Litschewski was found guilty on all three counts. He was sentenced to seven and one-half years in the state penitentiary for the third-degree rape, twelve and one-half years for the first-degree rape, and seven and one-half years for sexual contact with a minor, with the sentences to run consecutively. He was also ordered to pay restitution to the victims.

[¶ 7.] On appeal, Litschewski raises the following issues:

1. Whether the trial court erred in prohibiting Litschewski's counsel from asking J.A. about her allegation that only hours before the alleged rape Litschewski forcibly kissed her.

2. Whether attempted impeachment by the prosecutor of Litschewski's military service record was improper and prejudicial.

3. Whether questioning by the prosecutor of both Litschewski and his wife about his medical condition (genital warts) violated the spousal communication privilege and prejudiced his right to a fair trial.

### STANDARD OF REVIEW

[¶ 8.] We review a trial court's findings of fact under the clearly erroneous standard. *State v. Westerfield*, 1997 SD 100, ¶ 8, 567 N.W.2d 863, 866 (citations omitted). A trial court's evidentiary rulings "are presumed correct and are reviewed under an abuse of discretion standard." *State v. Larson*, 1998 SD 80, ¶ 10, 582 N.W.2d 15, 17 (citation omitted).

### DECISION

[¶ 9.] **1. The trial court did not err when it prohibited Litschewski from questioning J.A. about her allegation that he forcibly kissed her only hours before the alleged rape occurred.**

[¶ 10.] During two different stages of the proceedings, Litschewski made motions to offer evidence concerning an alleged prior act between he and J.A.[3] He claims that J.A. informed law enforcement officials that on

---

**3.** The first motion was made pretrial; the second was an offer of proof made after all the evidence

had been presented.

the date the rape occurred he had attempted to kiss her. In making his argument to the court, he stated:

> And if she went over to his house and agreed to sleep with him and knew she was going to spend the night and didn't tell her parents about these previous French kisses, that would go to credibility as to whether or not these kisses had happened and would go to credibility as to whether or not this rape occurred. That's the purpose for that type of information. Because I can show that she made plans to sleep at this house and slept at this house knowingly that night. She didn't just fall asleep.... What it does, is it would show no little girl would go spend the night at someone's house if the guy was trying to French-kiss them in the afternoon.

The court denied both motions finding that, if the evidence was as Litschewski suggested, it would only pertain to the matter of consent; therefore, it was not relevant.

[¶ 11.] Litschewski argues that the trial court erred in denying the admission of the other act evidence. He claims the evidence was relevant and should have been presented to the jury, so that the jurors could determine its significance when assessing J.A.'s credibility. We disagree.

[¶ 12.] This court has stated that "[q]uestions of the relevance of proffered testimony are committed to the discretion of the trial court and this Court will not reverse its ruling absent an abuse of discretion." *State v. Olson*, 408 N.W.2d 748, 752 (S.D.1987) (citing *State v. McDowell*, 391 N.W.2d 661 (S.D.1986)). Relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." SDCL 19–12–1; *see State v. Knecht*, 1997 SD 53, ¶ 7, 563 N.W.2d 413, 417; *State v. McDonald*, 421 N.W.2d 492, 494 (S.D. 1988). Moreover, only relevant evidence is admissible. *See* SDCL 19–12–2 (stating "[e]vidence which is not relevant is not admissible").

[¶ 13.] Therefore, for this other act evidence to be admissible it must be relevant. It is essential that the evidence have some relationship to an issue in the case. Here, the issue was whether Litschewski committed third-degree rape in violation of SDCL 22–22–1(5), which provides:

> Rape is an act of sexual penetration accomplished with any person under any of the following circumstances:
>
> \* \* \* \* \* \*
>
> (5) If the victim is ten years of age, but less than sixteen years of age, and the perpetrator is at least three years older than the victim[.]

[¶ 14.] We find that the other act evidence is not relevant to the issue of whether Litschewski committed third-degree rape. Moreover, it is clearly not relevant to any other issue in the case. It does not make "the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without [it]."

[¶ 15.] We agree with the trial court that the evidence would only pertain to consent and that consent is clearly not at issue here. *See State v. Bonner*, 1998 SD 30, ¶ 27, 577 N.W.2d 575, 583 (stating "children are incapable of 'consenting' to voluntary sexual relations"). Consent is not an element of the crime with which Litschewski was charged; therefore, the other act evidence is not relevant and its admission is prohibited.

[¶ 16.] Moreover, Litschewski's argument that the other act evidence was needed, so that the jury could assess J.A.'s credibility, is without merit. *See generally State v. Sieler*, 397 N.W.2d 89, 92 (S.D.1986). He argued to the trial court and in his brief to this Court that the other act evidence should have been presented to the jury, because the evidence pertained to the issue of credibility, not consent. However, regardless of the label Litschewski attaches to his argument, we find that he is attempting to admit this evidence to establish J.A.'s consent, not her credibility.[4] *See* SDCL 19–12–3 (Rule 403) (stating

---

4. In his brief to this Court, Litschewski argues that "if J.A. told this [that Litschewski had forcibly kissed her on the day the rape occurred] to law enforcement officers as part of her rendition of what had occurred that day, the jury was certainly entitled to assess its significance in considering the truth of her subsequent allegation of rape."

evidence is excludable if there is a danger of unfair prejudice, confusion of the issues or misleading the jury). As such, his argument fails.

■ [¶ 17.] In addition, we conclude that even if the trial court erred in refusing to admit the other act evidence, the error was harmless. Litschewski has the burden of establishing that the trial court's error prejudiced him, and he has not met that burden. *See In re Novaock,* 1998 SD 3, ¶ 10, 572 N.W.2d 840, 843 (the burden is on the party claiming error to establish that the error was prejudicial). The record shows that the State presented overwhelming evidence at trial to establish the rape of J.A. occurred, and that Litschewski committed the rape. Admitting the prior act evidence would not have changed the guilty verdict. *See State v. Latham,* 519 N.W.2d 68, 71 (S.D.1994) (stating that the court's denial of admission of "one specific act of violence would not have changed the jury's decision"). Therefore, if the trial court erred when it refused to allow Litschewski to question J.A. concerning the prior act regarding her credibility, the error was harmless. *See* SDCL 23A–44–14 (stating "[a]ny error, defect, irregularity or variance which does not affect substantial rights shall be disregarded"); *Latham,* 519 N.W.2d at 71.

[¶ 18.] **2. The trial court did not err in allowing impeachment of Litschewski based upon his military service record.**

■ [¶ 19.] Litschewski took the stand in his own defense. During direct examination, his counsel stated it was time for the jury to get to know him. Litschewski began to testify about his background. As part of this testimony, he stated that, following graduation from high school, he served time in the Navy and was stationed in Virginia on a guided missile cruiser. He also testified that he received an honorable discharge.

[¶ 20.] During cross-examination, the prosecutor questioned Litschewski about his Naval service and subsequent discharge. When questioned, he admitted that he "did not want to be in the Navy after [he] was there."

He also testified that his psoriasis, which he had previously shown the jury, had been determined to be service-connected, and that he received a monthly disability check because of it. He claimed that the psoriasis was not diagnosed as such until after he left the Navy, even though some of its symptoms were present during his time of service. When questioned about the circumstances of his discharge from the Navy, he denied telling a friend that he had intentionally inflamed his psoriasis in order to receive a discharge. He also denied attempting to use information, regarding an attempted murder he witnessed, to obtain a release from his Naval obligations.

[¶ 21.] Litschewski claims this cross-examination prejudiced him. He argues that the trial court allowed the State to improperly impeach him based upon his military record, and that the State's cross-examination of him went beyond the scope of direct examination. We disagree.

■ [¶ 22.] SDCL 19–14–8 provides that "[t]he credibility of a witness may be attacked by any party[.]" In addition, testimony on direct examination "opens the door" to impeachment evidence on cross-examination. *See State v. Fowler,* 1996 SD 78, ¶ 17, 552 N.W.2d 92, 95; *see also State v. Loop,* 477 N.W.2d 40, 42 (S.D.1991) (stating defendant "opened the door" to impeachment evidence by his direct examination testimony); *State v. Byrum,* 399 N.W.2d 334, 338 (S.D.1987) (stating defendant's testimony on direct examination that he had strong feelings against the use of drugs opened the door to the admission of evidence of other drug sales).

[¶ 23.] Here, we find that Litschewski's testimony during direct examination opened the door to cross-examination on the issues of his military service and discharge from the Navy. During direct examination, he testified about his military service and stated that he had been honorably discharged. Therefore, we find no error in the court allowing impeachment evidence on these issues.

[¶ 24.] Litschewski also argues that the court erred in admitting extrinsic evidence of

He further argues that "[d]efense counsel should have been allowed to argue what inference, if any could be drawn from J.A.'s allegation that she was forcibly kissed on the after-noon of July 3 by Litschewski, but nonetheless went to his home that evening and said nothing to her family about the kissing."

the circumstances surrounding his discharge from the Navy. We again disagree.

[¶ 25.] During State's rebuttal, the prosecutor questioned J.A.'s father, one of Litschewski's long-time friends, regarding conversations he had with Litschewski about his discharge from the Navy. J.A.'s father testified that Litschewski told him that, in order to obtain a release from the Navy, he rubbed steel wool on the areas affected by his skin condition, so that the condition would be aggravated. He also testified that Litschewski told him he had gone to a Naval authority and "said that he would publicize [the attempted murder he witnessed] . . . if they didn't let him out, and the Navy didn't want that publicized."

■ [¶ 26.] This Court has stated that "specific instances of conduct, under certain circumstances, may be inquired into on cross-examination but may not be proved by extrinsic evidence." *Byrum*, 399 N.W.2d at 337 (emphasis omitted); *see* SDCL 19–14–10.[5] However, even if "the evidence is not admissible under SDCL 19–14–10 [which prohibits the use of extrinsic evidence to prove specific instances of conduct] . . . it may be admissible to impeach by contradiction as allowed by 19–14–8[.]" *Byrum*, 399 N.W.2d at 337; *see* SDCL 19–14–8 (stating "[t]he credibility of a witness may be attacked by any party[.]").

[¶ 27.] The trial court ·found that, because Litschewski had testified, his credibility was at issue, and the State could present testimony as impeachment by contradiction under SDCL 19–14–8. We agree.

[¶ 28.] **3. Litschewski's claimed violation of the spousal communication privilege was not preserved for review.**

■ [¶ 29.] Litschewski claims that the trial court committed reversible error by allowing the prosecutor to cross-examine him and his wife Nancy about her knowledge of his treatment for a genital wart condition. He

claims this questioning violated the spousal communication privilege and prejudiced his constitutional guarantee of a fair trial.

[¶ 30.] However, Litschewski has not preserved this claimed error for our review. He filed, and the court granted, a pretrial motion regarding the spousal communication privilege. That motion was not sufficient to preserve the issue for review. *See State v. Jones*, 416 N.W.2d 875, 878 (S.D.1987). At trial, Litschewski raised no objections to the questions or testimony presented. Accordingly, we find that his "failure to specifically object to evidence at trial forecloses complaint of the issue on appeal" and, therefore, this issue need not be reached. *State v. Wall*, 481 N.W.2d 259, 265 (S.D.1992) (citations omitted).

[¶ 31.] Affirmed.

[¶ 32.] AMUNDSON, KONENKAMP, and GILBERTSON, Justices, concur.

[¶ 33.] SABERS, Justice, dissents.

SABERS, Justice (dissenting).

[¶ 34.] The trial court erred in denying the admission of the other act evidence offered by Litschewski. It was relevant to J.A.'s credibility and admissible for impeachment purposes. Therefore, I dissent.

[¶ 35.] I agree that consent was not in issue in this case. Consent was not even available as a defense to this charge because the victim was a minor. Rather Litschewski claimed that the rape did not occur. However, the other act evidence of an attempt by Litschewski to forcibly kiss J.A. hours before the alleged rape was proper impeachment and relevant to J.A.'s credibility. If the jury questioned J.A.'s credibility regarding the kissing incident, it could have believed J.A. would not have voluntarily stayed over at Litschewski's house and questioned her credibility regarding the alleged rape. *State v. Chamley*, 1997 SD 107, ¶ 24, 568 N.W.2d 607, 615.

---

5. SDCL 19–14–10 provides:

Specific instances of conduct of a witness, for the purpose of attacking or supporting his credibility, other than conviction of crime . . . may not be proved by extrinsic evidence. They may, however, in the discretion of the court, if probative of truthfulness or untruthfulness, be

inquired into on cross-examination of the witness
(1) concerning his character for truthfulness or untruthfulness, or
(2) concerning the character for truthfulness or untruthfulness of another witness as to which character the witness being cross-examined has testified.

[¶ 36.] "Witness credibility is a question for the jury." *State v. Wooley*, 461 N.W.2d 117, 120 (S.D.1990) (citing *State v. Wilcox*, 441 N.W.2d 209, 214 (S.D.1989)).

> In many sex crime cases, credibility of the witnesses is of paramount importance. In fact, it may well be the most important factor the trier of fact considers because there is often no direct evidence implicating the defendant. Moreover, allegations of sexual misconduct are easy to allege and difficult to disprove. When this is the case, the jury's decision to convict or acquit comes down to one person's word against another's. The victor of this credibility duel wins more than just vindication; the prize is a favorable verdict.

*Chamley*, 1997 SD 107 at ¶ 25, 568 N.W.2d at 615. Litschewski had the right to attempt to impeach J.A.'s credibility with the other act evidence. "The jury is the exclusive judge of the credibility of witnesses and the weight of the evidence in South Dakota." *State v. Huber*, 356 N.W.2d 468, 476 (S.D.1984) (citing *State v. Bonrud*, 246 N.W.2d 790, 793 (S.D.1976)). The jury should decide the weight, if any, to give to the impeachment evidence. Therefore, I dissent. We should reverse and remand for a new trial.