1999 SD 80

**STATE of South Dakota, Plaintiff and Appellee,**

v.

**Benjamin WALTON, Defendant and Appellant.**

No. 20403.

Supreme Court of South Dakota.

Argued March 23, 1999.

Decided June 30, 1999.

Mark Barnett, Atty. Gen., Craig M. Eichstadt, Deputy Atty. Gen. and Paul Cremer, Asst. Atty. Gen., Pierre, for plaintiff and appellee.

Edward G. Albright, Pennington County Public Defender's Office, Rapid City, for defendant and appellant.

MILLER, Chief Justice.

[¶ 1.] Walton appeals his conviction of the first-degree manslaughter of Daniel Lehmkuhl. We affirm.

## FACTS

[¶ 2.] On November 8, 1996, Justin Wood drove Emmanuel Geliga, Jorge Geliga and Benjamin Walton to the Baken Park shopping plaza in Rapid City, South Dakota, where the group planned to meet some girls. Wood parked in front of the Conoco gas station, and Emmanuel and he went inside. While they were inside, Jason Tschakert, an individual with whom the

group had a prior run-in, approached the vehicle and a verbal altercation ensued.[1] Tschakert spit on Wood's car and challenged Walton and Jorge to leave the car and fight, but neither left the vehicle.

[¶ 3.] After Tschakert departed, Wood and Emmanuel returned to the car and drove to the other end of the Baken Park plaza lot to wait for the girls. Tschakert drove his vehicle near the area where Wood's car was located and then proceeded to the area behind the Conoco station, where he picked up Tony Akers. Tschakert and Akers drove back to the location where Wood's car was parked, and Tschakert parked his vehicle near the passenger's side of Wood's car. After he and Akers exited the vehicle, a verbal altercation occurred.

[¶ 4.] A group of individuals soon gathered near the Wood and Tschakert vehicles. Among the group was Daniel Lehmkuhl, who joined Tschakert and Akers at the passenger's side of Wood's car and also joined in the verbal exchange. Lehmkuhl then approached the driver's side, where Wood was seated in the front driver's seat and Walton was seated directly behind him. Lehmkuhl opened the driver's side door and ordered Wood out of the car. Wood complied and Lehmkuhl entered the car. Thereafter, a fight ensued inside the car, with Lehmkuhl kneeling on the front seat fighting Walton, who was seated in the backseat. Walton was carrying a knife and stabbed Lehmkuhl once in the heart and once in the face. After being stabbed, Lehmkuhl got out of Wood's car, hit the car, and then fell to the ground. Paramedics were called and Lehmkuhl was taken to the Rapid City Regional Hospital.

He died ten days later as a result of the stab wound to the heart.

[¶ 5.] Wood, Emmanuel, Jorge, and Walton immediately left the scene and drove to the Crystal Cave area of the Black Hills, where Walton hid the knife. Shortly thereafter, Walton was taken into custody.

[¶ 6.] On November 19, 1996, the Pennington County State's Attorney filed a juvenile petition charging Walton with first-degree manslaughter. On the same date, State made a motion to transfer the charges to adult court. The motion was granted on March 12, 1997, and on March 13 State filed a complaint charging Walton with second-degree murder[2] and, in the alternative, first-degree manslaughter.[3] Walton pleaded not guilty to both counts.

[¶ 7.] On December 1, 1997, a jury trial commenced. Walton was found guilty of first-degree manslaughter and sentenced to thirty years in the state penitentiary.

[¶ 8.] On appeal, Walton raises the following issues:

1. Whether the trial court erred in its instructions regarding justifiable homicide.

2. Whether the trial court erred by allowing the introduction of testimony regarding Walton's character.

3. Whether the trial court erred by denying Walton's request to use prior acts evidence of a State's witness.

4. Whether the trial court erred by allowing Walton to be tried on a second-degree murder charge.

5. Whether State's reference to Walton's post-arrest silence violated Walton's due process rights.

1. Conflicting testimony exists as to the individuals' words and actions and as to who instigated this and other confrontations.

2. Second-degree murder is a violation of SDCL 22–16–7, which provides as follows:

Homicide is murder in the second degree when perpetrated by any act imminently dangerous to others and evincing a depraved mind, regardless of human life, al-

though without any premeditated design to effect the death of any particular individual.

3. First-degree manslaughter is a violation of SDCL 22–16–15(3), which provides in part:

Homicide is manslaughter in the first degree when perpetrated:

\* \* \* \*

(3) Without a design to effect death, but by means of a dangerous weapon[.]

## STANDARD OF REVIEW

[¶ 9.] A trial court's evidentiary rulings are "presumed correct and are reviewed under an abuse of discretion standard." *State v. Larson*, 1998 SD 80, ¶ 10, 582 N.W.2d 15, 17 (citing *State v. Goodroad*, 1997 SD 46, ¶ 9, 563 N.W.2d 126, 129 (other citation omitted)). "'The test is not whether we would have made the same ruling, but whether we believe a judicial mind, in view of the law and the circumstances, could have reasonably reached the same conclusion.'" *Id.* (citations omitted). A trial court's refusal of a proposed jury instruction is also reviewed under an abuse of discretion standard. *State v. Eagle Star*, 1996 SD 143, ¶ 13, 558 N.W.2d 70, 73.

## DECISION

### [¶ 10.] 1. The trial court did not err in denying Walton's proposed jury instructions.

[¶ 11.] The trial court refused four of Walton's proposed jury instructions, two justifiable homicide instructions and two fourth-degree burglary instructions. Walton claims the instructions were essential to his defense theory that he was defending himself against Lehmkuhl, who was committing a fourth-degree burglary. He argues that the court's failure to adequately provide the jury with a full and correct statement of the law applicable to the case denied him a right to a fair trial as guaranteed by the United States and South Dakota Constitutions. We disagree.

[¶ 12.] "Trial courts possess broad discretion in instructing the jury." *State v. Pellegrino*, 1998 SD 39, ¶ 9, 577 N.W.2d 590, 594 (citations omitted). It is the trial court's duty "to instruct the jury on the law applicable to the case." *Eagle Star*, 1996 SD 143, ¶ 15, 558 N.W.2d at 73 (citing *Black v. Gardner*, 320 N.W.2d 153, 158 (S.D.1982) (citations omitted)). In addition, "[u]pon proper request, defendants are entitled to instructions on their defense theories if evidence supports them." *Pellegrino*, 1998 SD 39, ¶ 9, 577 N.W.2d at 594 (citations omitted). "'[J]ury instructions are adequate when, considered as a whole, they give the full and correct statement of the law applicable to the case.'" *State v. Rhines*, 1996 SD 55, ¶ 111, 548 N.W.2d 415, 443, *cert. denied*, 519 U.S. 1013, 117 S.Ct. 522, 136 L.Ed.2d 410 (1996) (quoting *State v. Fast Horse*, 490 N.W.2d 496, 499 (S.D.1992) (citation omitted)). To reverse a trial court's refusal to give an instruction, the defendant must be unfairly prejudiced by the refusal. *Id.* Moreover, the defendant must show that "'the jury might and probably would have returned a different verdict if [the] instruction had been given.'" *Id.* (quoting *State v. Bartlett*, 411 N.W.2d 411, 415 (S.D.1987) (other citation omitted)).

[¶ 13.] When viewing the instructions as a whole, we find that they adequately provided a correct statement of the law. The jury was instructed on justifiable homicide and self-defense. Even though the instructions given were not identical to those proposed by Walton, the trial court properly instructed the jury on the law applicable to the case. As we have previously stated, "[i]t is not error for the trial court to refuse a requested instruction which amplifies the principle embodied in a given instruction." *Eagle Star*, 1996 SD 143, ¶ 13, 558 N.W.2d at 73 (citations omitted). Furthermore, as this Court stated in *State v. Holloway*, 482 N.W.2d 306, 310 (S.D.1992), "[w]hile the justifiable homicide instructions and self-defense instructions are not identical, the giving of either one would require the jury to consider whether or not it believed [Walton] was defending himself[.]"

[¶ 14.] In addition, the jury was instructed that State needed to prove beyond a reasonable doubt that Walton was not acting in self-defense. The jury heard testimony that Lehmkuhl entered Wood's car and a fight ensued. It also heard Walton testify that he acted in self-defense when he stabbed Lehmkuhl. After hearing the evidence and the instructions, the

jury found Walton guilty of first-degree manslaughter. We cannot say, and Walton has not established, that had the jury been instructed as he proposed, it would have reached a different verdict. Therefore, we find no error in the court's refusal of Walton's proposed instructions. *See Pellegrino,* 1998 SD 39, ¶ 18, 577 N.W.2d at 598.

### [¶ 15.] 2. The trial court did not err in admitting evidence that Walton had previously carried a knife.

[¶ 16.] Prior to trial, State moved to introduce evidence that Walton had previously carried a knife, wielded it on more than one occasion, and had spoken about, and gestured as to, the way in which he would use the knife if needed. The trial court determined that, under SDCL 19–12–5,[4] the evidence regarding Walton's other acts with a knife was not relevant to any material issue in the case, and its prejudicial effect substantially outweighed its probative value. As such, it denied State's motion.

[¶ 17.] Also prior to trial, Walton filed a motion in limine to prevent the admission of evidence of his having previously carried a knife. The trial court denied Walton's motion, stating that the evidence would be admissible if, at the time of its introduction, it was relevant.

[¶ 18.] At trial, over Walton's objection, the court allowed the testimony of two witnesses who stated that they had seen Walton carry a knife on previous occasions.[5] Walton claims this testimony was improper character testimony and was inadmissible under SDCL 19–12–4[6] and SDCL 19–12–5. We disagree.

[¶ 19.] Initially, for evidence to be admissible, it must be relevant. *See* SDCL 19–12–2. Relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." SDCL 19–12–1; *see State v. Litschewski,* 1999 SD 30, ¶ 12, 590 N.W.2d 899, 902; *State v. Knecht,* 1997 SD 53, ¶ 7, 563 N.W.2d 413, 417. When considering the admissibility of prior act evidence, this Court has stated that "no 'preliminary showing is necessary before such evidence may be introduced for a proper purpose.'" *State v. Wright,* 1999 SD 50, ¶ 13, 593 N.W.2d 792, 798 (citation omitted). The rule (404(b)) is a rule of inclusion and "establishes that such evidence is *only* inadmissible if offered to prove character." *Id.* (citation omitted).

[¶ 20.] We find that the evidence concerning Walton's history of carrying a knife was not improper character evidence or prior acts evidence, but rather was evidence that was intricately related to the facts of the case and, as such, was admissible without reference to SDCL 19–12–5 or SDCL 19–12–4. *See State v. Loftus,* 1997 SD 94, ¶ 18, 566 N.W.2d 825, 829 (citing

4. SDCL 19–12–5 provides:
   Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

5. The witnesses provided no testimony regarding Walton's gestures or actions with the knife.

6. SDCL 19–12–4 provides:
   Evidence of a person's character or a trait of his character is not admissible for the purpose of proving that he acted in conformity therewith on a particular occasion, except:
   (1) Evidence of a pertinent trait of his character offered by an accused, or by the prosecution to rebut the same;
   (2) Evidence of a pertinent trait of character of the victim of the crime offered by an accused, or by the prosecution to rebut the same, or evidence of a character trait of peacefulness of the victim offered by the prosecution in a homicide case to rebut evidence that the victim was the first aggressor;
   (3) Evidence of the character of a witness, as provided in §§ 19–14–8 to 19–14–16, inclusive.

*State v. Barber*, 1996 SD 96, ¶ 18, 552 N.W.2d 817, 820). The evidence was directly connected to Walton's stabbing and killing of Lehmkuhl. *See Knecht*, 1997 SD 53, ¶ 11, 563 N.W.2d at 418; *see also Goodroad*, 1997 SD 46, ¶ 10, 563 N.W.2d at 130 (citations omitted) (stating that evidence is admissible that would "tend logically to prove an element of the crime[.]"). Walton was charged with second-degree murder and first-degree manslaughter. Establishing that he carried a knife was essential to proving the charges. *See Larson*, 1998 SD 80, ¶ 30, 582 N.W.2d at 21 (citation omitted) (stating State must prove every element of the charged offense beyond a reasonable doubt); *Knecht*, 1997 SD 53, ¶ 10, 563 N.W.2d at 418 (citation omitted) ("When a defendant raises the affirmative defense of self-defense, it is incumbent upon the State to prove beyond a reasonable doubt that the killing was without authority of law."). Because the evidence was intricately related to the charged crime, the trial court did not abuse its discretion in admitting it.

### [¶ 21.] 3. The trial court did not err in denying admission of Tony Akers' prior acts.

[¶ 22.] Prior to trial, Walton submitted a notice of intent to use prior acts evidence that Akers, one of State's witnesses, had previously assaulted individuals while such individuals were in their vehicles. The trial court ruled that the evidence could not be admitted as prior acts testimony, but reserved its ruling on whether the evidence could be used for impeachment purposes.

[¶ 23.] During trial, State objected when Walton asked Akers if he had ever hit, or attempted to hit, someone in a vehicle. The trial court sustained the objection. On re-cross, Akers denied hitting anyone in Wood's car. Walton then attempted to introduce witnesses, and made an offer of proof to the court, to establish that Akers had previously assaulted individuals while

they were in their vehicles. The trial court refused Walton's request.

[¶ 24.] Walton claims the trial court's denial violated his right to effectively cross-examine Akers. He further claims that the court abused its discretion when it prohibited him from calling witnesses for purposes of impeachment and to introduce prior acts evidence. We disagree.

[¶ 25.] As this Court has previously stated, an accused's right to confront witnesses is "guaranteed by the Sixth Amendment to the United States Constitution and by Article VI, § 7 of the South Dakota Constitution." *State v. Koepsell*, 508 N.W.2d 591, 594–95 (S.D.1993). However, " '[t]he trial court retains broad discretion concerning the limitation of cross-examination and it will be reversed only when there is a clear showing of abuse of discretion and a showing of prejudice to the defendant.' " *State v. Steichen*, 1998 SD 126, ¶ 37, 588 N.W.2d 870, 878 (quoting *Koepsell*, 508 N.W.2d at 595 (citations omitted)). "The defendant has the burden of establishing that 'a reasonable jury probably would have a significantly different impression if otherwise appropriate cross-examination had been permitted.' " *Id.* (citations omitted). Walton has failed to meet this burden.

[¶ 26.] Walton was permitted to cross-examine Akers about his attempt to assault Walton inside Wood's vehicle. Akers denied such action, but admitted to reaching into the car to grab Walton as the car was leaving the scene after the stabbing occurred. The trial court then prohibited Walton from expanding the cross-examination to questions regarding Akers' acts against others not involved in the litigation.

[¶ 27.] We find it was within the trial court's discretion to limit Walton's cross-examination of Akers in this manner. *Id.* at ¶ 38, 588 N.W.2d at 878. Moreover, Walton has not established that this limitation prejudiced him or that, if the jury been presented with this evidence, it would

have had a significantly different impression. *See id.; Koepsell*, 508 N.W.2d at 595; *State v. Bogenreif*, 465 N.W.2d 777, 782 (S.D.1991). We have recognized that " 'the Confrontation Clause guarantees an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish.' " *Bogenreif*, 465 N.W.2d at 782 (quoting *Delaware v. Fensterer*, 474 U.S. 15, 20, 106 S.Ct. 292, 294, 88 L.Ed.2d 15, 19 (1985) (citations omitted)). Therefore, we find no error.

[¶ 28.] Walton also claims that the court erred in denying his request to call three witnesses for purposes of impeachment and to introduce evidence of Akers' prior acts. This argument is without merit.

[¶ 29.] SDCL 19–14–10 provides that:

Specific instances of the conduct of a witness, for the purpose of attacking or supporting his credibility, other than conviction of crime ... may not be proved by extrinsic evidence. They may, however, in the discretion of the court, if probative of truthfulness or untruthfulness, be inquired into on cross-examination of the witness

(1) concerning his character for truthfulness or untruthfulness, or

(2) concerning the character for truthfulness or untruthfulness of another witness as to which character the witness being cross-examined has testified.

Moreover, this Court has recognized that evidence that may be inadmissible under SDCL 19–14–10 "may be admissible to impeach by contradiction as allowed by SDCL 19–14–8[.]" [7] *State v. Byrum*, 399 N.W.2d 334, 337 (S.D.1987).

[¶ 30.] Walton claims the narrow exception stated in *Byrum* is applicable here. We disagree with Walton and agree with the trial court's statement that "[t]he fact

that something may have occurred at some prior time or at some distant place is not impeachment." Clearly, the exception does not apply. Accordingly, we find no error.

[¶ 31.] In addition, Walton's claim that the trial court should have allowed the introduction of evidence of Akers' prior acts to establish intent and modus operandi is also without merit. The trial court determined that the prior acts evidence was inadmissible because it was not relevant. We find no abuse of discretion in such a determination. *See Steichen*, 1998 SD 126, ¶ 16, 588 N.W.2d at 874; *Barber*, 1996 SD 96, ¶ 14, 552 N.W.2d at 820.

[¶ 32.] **4. The trial court did not err in denying Walton's motion to dismiss the second-degree murder charge.**

[¶ 33.] On November 19, 1996, Walton was charged in juvenile court with first-degree manslaughter. State moved to have Walton transferred to adult court and, on March 12, 1997, the juvenile court granted State's motion. On March 13, State filed a complaint charging Walton with second-degree murder and, in the alternative, first-degree manslaughter.

[¶ 34.] Prior to the preliminary hearing, and after the proceedings were bound over to circuit court, Walton moved to dismiss the second-degree murder charge. The trial court denied Walton's motions. Walton then filed a petition for an intermediate appeal of the trial court's ruling. This Court denied the petition. Prior to trial, Walton renewed his motion to dismiss the second-degree murder charge and requested a standing objection throughout the trial. The trial court again denied the motion. Walton was convicted of first-degree manslaughter, the crime for which he was charged in juvenile court.

[¶ 35.] Walton claims that the transfer of the proceedings from juvenile to adult

7. SDCL 19–14–8 provides as follows:

The credibility of a witness may be attacked by any party, including the party calling him.

court did not grant the circuit court jurisdiction to proceed against him on the second-degree murder charge. He further argues that State's failure to notify him of its intent to proceed on a second-degree murder charge was a denial of his right to due process under the South Dakota and United States Constitutions. Again, we disagree.

[¶ 36.] SDCL 26–11–4 governs the transfer of proceedings from juvenile to adult court. At the time of Walton's transfer, SDCL 26–11–4 provided in part:[8]

> The circuit court may, in its discretion, in any case of a delinquent child, after transfer hearing, permit such child to be proceeded against in accordance with the laws that may be in force in this state governing the commission of crimes, petty offenses or violation of municipal ordinances.

The statute also lists seven factors which the court may consider in determining whether the juvenile should be transferred.[9] However, it is silent, as are all other provisions in the chapter, on the issue of whether a juvenile may be charged with additional offenses after such transfer is granted.

[¶ 37.] The question of filing additional charges after the granting of the transfer is one of first impression for South Dakota. Although we have not had the opportunity to address this question, other jurisdictions have ruled upon this issue. *See, e.g., Knotts v. State,* 686 So.2d 431, 476 (1995)

(stating that "the circuit court to which the case is transferred is limited to the consideration of the specific acts, behavior, or subject matter of the petition, but it is not limited to the specific named offense"); *State v. Randolph,* 19 Kan.App.2d 730, 876 P.2d 177, 181 (1994) (stating "the trial court did not err when it permitted the continuation of the prosecution of Randolph on two different criminal charges that had not originally been filed in juvenile court"); *People v. Hoerle,* 3 Mich.App. 693, 143 N.W.2d 593, 595 (1966) (stating that a waiver to permit prosecution for one offense is not waiver to permit prosecution for a greater one); *Junior v. State,* 89 Nev. 121, 507 P.2d 1037, 1038 (1973) (stating that "charging the defendant with a more serious crime than that which was pending at the time of certification was error"); *State v. Garcia,* 93 N.M. 51, 596 P.2d 264, 267 (N.M.1979) (stating the trial court did not err in denying Garcia's motion to quash, because the indictment covered offenses arising from the same transaction).

[¶ 38.] We find the court's reasoning in *Randolph* to be persuasive. 19 Kan. App.2d 730, 876 P.2d 177. In *Randolph,* the state failed to inform Randolph, who had been charged in juvenile court with one count of attempted aggravated robbery, that it intended to bring additional felony charges against him in the criminal court proceedings. After transfer to the criminal court, the state charged Randolph

---

8. SDCL 26–11–4 has since been amended.

9. At the time of transfer, SDCL 26–11–4 provided in part:

    The following factors may be considered by the court in determining whether a child should be transferred:
    (1) The seriousness of the alleged offense to the community and whether protection of the community requires waiver;
    (2) Whether the alleged offense was committed in an aggressive, violent, or willful manner;
    (3) Whether the alleged offense was against persons or property with greater weight being given to offenses against persons;
    (4) The prosecutive merit of the complaint. The state shall not be required to establish probable cause to show prosecutive merit;
    (5) The desirability of trial and disposition of the entire offense in one proceeding when the child's associates in the alleged offense are adults;
    (6) The record and previous history of the juvenile;
    (7) The prospect for adequate protection of the public and the likelihood of reasonable rehabilitation of the juvenile, if he is found to have committed the alleged offense, by the use of procedures, services and facilities currently available to the juvenile court.

with one count of robbery, one count of aggravated battery, and one count of attempted aggravated robbery. He was convicted of aggravated battery, which had not been charged in juvenile court. On appeal, the Kansas Court of Appeals held that because the

> criminal court acquires personal and subject matter jurisdiction over the case, [t]he criminal court can try any additional charges that might arise from the same set of facts that spawned the juvenile case, whether the charges come from the State filing additional charges prior to the preliminary hearing or by the trial court binding the defendant over on different charges at the preliminary hearing.

*Randolph,* 876 P.2d at 180–81.

[¶ 39.] Here, the juvenile court considered seven factors when making its transfer determination. *See* SDCL 26–11–4. Although the court considered the seriousness of the offense, it also considered the other six factors. *See State v. Jensen,* 1998 SD 52, ¶ 22, 579 N.W.2d 613, 617 (quoting S*tate v. Harris,* 494 N.W.2d 619, 624 (S.D.1993)) (stating that " '[n]o controlling weight is given to any factor' "). We find, as the *Randolph* court did, that these factors for consideration do "not require a strict policy of bringing every charge before the juvenile court for its approval. The juvenile court is to make the judicial determination of whether a juvenile should remain within the province of the juvenile court and not determine what charges the State can file." *Randolph,* 876 P.2d at 180; *see generally State v. Flying Horse,* 455 N.W.2d 605, 608 (S.D.1990) (stating a juvenile transfer hearing is not adjudicatory in nature and only resolves which forum is most appropriate to hold a trial on its merits); *see also People in the Interest of Y.C.,* 1997 SD 126, ¶ 7, 570 N.W.2d 36, 38 (citation omitted) (stating "a juvenile court transfer hearing cannot result in a determination of delinquency, cannot result in a finding of guilt as in a criminal case, and cannot 'directly result in confinement or

other punishment as may both a delinquency hearing and a criminal proceeding' ").

[¶ 40.] The juvenile court determined that Walton should be transferred to adult court. South Dakota law provides that after transfer Walton could "be proceeded against in accordance with the laws that may be in force in this state governing the commission of crimes, petty offenses or violation of municipal ordinances." SDCL 26–11–4. Therefore, we find that State was not prohibited from filing additional charges after the transfer was granted. *See Knotts,* 686 So.2d at 476; *Randolph,* 876 P.2d at 181. Accordingly, the trial court did not err in denying Walton's motion to dismiss the second-degree murder charge.

[¶ 41.] **5. Walton's due process rights were not violated by State's comments during closing arguments.**

[¶ 42.] During closing argument the state's attorney made the following statements:

> This individual has had months to think about his story. Thirteen months. You heard those witnesses take the stand and testify from their police reports, which were written within 24 hours or 48 hours of the incident. He's had 13 months to take that stand and tell you what his version was.
>
> * * *
>
> What does he tell us next, ladies and gentlemen? "I put it [the knife] on my lap because I thought he might see it." That's weak, weak as hell. You know, that's bologna. It took thirteen months to think of that.

[¶ 43.] Walton claims these comments violated his constitutional right to remain silent and his right to due process. We find his argument to be without merit.

[¶ 44.] "The Supreme Court has stated that the 'Fifth Amendment . . . forbids either comment by the prosecution on the accused's silence or instructions by the

court that such silence is evidence of guilt.'" *Jones v. Class,* 1998 SD 55, ¶ 34, 578 N.W.2d 154, 164 (quoting *Griffin v. California,* 380 U.S. 609, 615, 85 S.Ct. 1229, 1233, 14 L.Ed.2d 106, 110 (1965)). Therefore, a prosecutor's comment on such silence is reversible error. *See State v. Strickland,* 87 S.D. 522, 529, 211 N.W.2d 575, 580 (1973).

[¶ 45.] Here, however, we conclude that the prosecutor's comments were not comments on Walton's silence, but rather comments regarding his credibility and the evidence presented. *See State v. Nachtigall,* 296 N.W.2d 530, 531 (S.D.1980) (citations omitted) (stating the prosecutor's comments were permissible as a summary of the state of the evidence). As such, the comments did not violate Walton's rights. *See State v. Jacob,* 253 Neb. 950, 574 N.W.2d 117, 138 (1998). Therefore, we find no error.

[¶ 46.] Affirmed.

[¶ 47.] AMUNDSON, KONENKAMP and GILBERTSON, Justices, concur.

[¶ 48.] SABERS, Justice, concurs in part, concurs in result in part, and dissents in part.

SABERS, Justice (concurring in part, concurring in result in part and dissenting in part).

[¶ 49.] I concur on Issues 4 and 5 and concur in result on Issues 1 and 3.

[¶ 50.] However, I dissent on Issue 2 because the trial court improperly allowed the State to introduce evidence that Walton carried a knife on occasions prior to the night of the altercation with Lehmkuhl. This error prejudiced Walton and denied him a fair trial. Therefore, we should reverse and remand for a new trial.

[¶ 51.] The majority opinion claims that this evidence was not used as prior acts evidence under SDCL 19–12–5. Rather, it claims that the evidence was "intricately related to the charged crime." It claims that testimony that Walton carried a knife

on two occasions, several months before the night in question, was necessary to prove an element of the charged crimes. I disagree because it was unnecessary and used prejudicially.

[¶ 52.] It should be emphasized that the two witnesses who testified about Walton carrying a knife on prior occasions did *not* testify that they saw Walton carrying a knife on the day of the altercation and were *not* present at the scene of the altercation. Further, the State presented testimony at trial of eyewitnesses who *were* present at the scene and saw Walton with the knife. Emmanuel Geliga testified that he saw Walton with the knife in his hand and that he saw the knife covered with blood. He made a drawing of the knife for law enforcement, which was admitted into evidence at trial by the State. Justin Wood also testified that he saw Walton with a knife. In addition, Walton's defense counsel conceded in opening argument that Walton had a knife and stabbed Lehmkuhl. Walton also testified that he stabbed Lehmkuhl, but claimed he acted in self-defense.

[¶ 53.] The testimony that Walton carried a knife on prior occasions did not prove that he had a knife on the night in question. Even if it did, it was totally unnecessary because the State had testimony from eyewitnesses who actually saw the knife on the night in question. Therefore, even if I were to accept the majority opinion's claim that this was not prior acts evidence, the evidence should have been excluded under SDCL 19–12–3 because its probative value was "substantially outweighed by the danger of *unfair prejudice,* confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or *needless presentation of cumulative evidence."* (Emphasis added).

[¶ 54.] The only reason the State introduced testimony that Walton carried a knife on prior occasions was to prove his bad character. And that is exactly how they used it. In closing arguments, the State stated:

Ben Walton took this [knife] with him that night, as you heard he's done on many prior occasions even prior to that night. Unfortunately, for everyone, and something the State doesn't condone, and I want you to understand that.... But what do we know about the Defendant? Think back for a minute. We know that you saw two young women take the stand and say he had a habit of carrying that knife. He did on many occasions.... Now, you heard Jacey Barnes say he kept it, carried it on a sheath all the time on his ankle.... He had a habit of carrying this [knife]. The young ladies that knew him said he had a habit of carrying this [knife] especially after ... he came back from California.

The testimony was used to show that Walton was a bad person who carried a knife and therefore, he must have intended to kill Lehmkuhl. SDCL 19–12–5 is intended to prevent such use of prior acts.

[¶ 55.] The majority author was more convincing in *State v. Moeller,* 1996 SD 60, ¶ 12, 548 N.W.2d 465, 471, where he wrote: "Generally, evidence of crimes or acts other than the ones with which the defendant is charged are inadmissible, unless certain exceptions apply." Contrary to the position taken by the majority in this case and in *State v. Wright,* 1999 SD 50, ¶ 13, 593 N.W.2d 792, 797, I maintain that SDCL 19–12–5 remains a rule of general inadmissibility and we must be "ever vigilant" that the exception does not swallow the rule. *State v. Steele,* 510 N.W.2d 661, 667 (S.D. 1994) (citing *State v. Chapin,* 460 N.W.2d 420, 421 (S.D.1990) (citations omitted)). *See also State v. Ondricek,* 535 N.W.2d 872, 878 (S.D.1995) (Sabers, J., dissenting); *State v. Christopherson,* 482 N.W.2d 298, 305 (S.D.1992) (Sabers, J., dissenting); *Matter of R.S.S.,* 474 N.W.2d 743, 748 (S.D.1991). Based on this court's recent opinions, culminating in *Wright,* it appears that it is now open season on defendants through prior acts evidence.

[¶ 56.] The testimony that Walton carried a knife on prior occasions was inad-missible character evidence which the trial court should have excluded. Walton was prejudiced by the admission of the evidence because it painted him as a bad person always carrying a knife looking for a fight. This characterization, created by the State through the use of the prior act evidence, was unfairly prejudicial to his claim of self-defense. As a result, he was denied a fair trial. Therefore, we should reverse and remand for a new trial.